ELLEN M. MAHAN
Deputy Section Chief
SHEILA McANANEY (IL Bar No. 6309635)
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Telephone:  (202) 616-6535
sheila.mcananey@usdoj.gov

BRIAN J. STRETCH (CSBN 163973)
Acting United States Attorney
ALEX G. TSE (CSBN 152348)
Chief, Civil Division
MICHAEL T. PYLE (CSBN 172954)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5087
michael.t.pyle@usdoj.gov

Attorneys for Plaintiff United States of America

(Counsel con'td on next page)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | **COMPLAINT** |
| BLUE LAKE POWER, LLC | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

COMPLAINT

1  NANCY DIAMOND (Bar No. 130963)
   District Counsel
2  Law Offices of Nancy Diamond
3  822 G Street, Suite 3
   Arcata, CA 95521
4  Telephone: (707) 826-8540
   ndiamond@ndiamondlaw.com
5
6  Attorney for Plaintiff North Coast Unified Air
   Quality Management District
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

COMPLAINT

## COMPLAINT

Plaintiffs, the United States of America ("the United States"), by the authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the North Coast Unified Air Quality Management District ("District"), by and through the undersigned attorneys, allege as follows:

## NATURE OF ACTION

1.   This is a civil environmental enforcement action under Section 113(b) of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7413(b), by the United States and the District alleging that Defendant Blue Lake Power, LLC ("Defendant") violated the Act, California state law, and the federally-approved District regulations incorporated into the California State Implementation Plan ("SIP"), at a biomass-fired electric generating plant in Blue Lake, California ("the Facility").

2.   The United States and the District seek civil penalties and injunctive relief requiring Defendant to implement remedial measures needed to comply with the above-referenced authorities and to mitigate excess emissions that have resulted from Defendant's non-compliance.

## JURISDICTION

3.   This Court has jurisdiction over the subject matter of this action and the parties pursuant to Section 113(b) of the Act, 42 U.S.C. §§ 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.  In addition, this Court has supplemental jurisdiction over the District's claims under 28 U.S.C. § 1367.  This Court also has jurisdiction over the parties in this action.

## VENUE AND AUTHORITY

4.   Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395, because the Facility is located, and the alleged violations occurred, and are occurring, in this judicial district.

3

COMPLAINT

5.   Intradistrict assignment is proper in the San Francisco or Oakland Divisions pursuant to Civil L.R. 3-2, because a substantial part of the events and omissions giving rise to this Complaint occurred in Humboldt County.

6.   Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and Section 305(a) of the Act, 42 U.S.C. § 7605(a).

7.   Authority to bring this action is vested in the District's Air Pollution Control Officer pursuant to California Health and Safety Code sections 42402 through 42402.3, 42301, and 42301.10.

**NOTICES**

8.   On March 3, 2014, EPA issued a Notice of Violation ("NOV") to Defendant pursuant to Section 113 (b)(1) of the Act, 42 U.S.C. § 7413(b)(1), and provided a copy of the NOV to the State of California.

9.   The 30-day period between issuance of the NOV and commencement of a civil action, required under Section 113 of the Act, 42 U.S.C. § 7413, has elapsed.

10.  Notice of the commencement of this action has been given to the California Environmental Protection Agency, as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

**PARTIES**

11. Plaintiff United States of America is acting at the request and on behalf of the EPA Administrator.

12. Plaintiff District is a duly constituted unified air pollution control district existing by virtue of California Health and Safety Code sections 40150-41062.  The District is a public agency created in 1984.  Pursuant to California Health and Safety Code sections 39002, 40000 and 40001, the District is vested with the primary authority for implementing and enforcing the California and federal Clean Air Acts as they relate to stationary sources of air pollution.  The District is a body corporate and politic and is a public agency of the State of California with

4

COMPLAINT

power to sue in the name of the District in all actions and proceedings in all courts of competent jurisdiction.

13. Defendant is a California corporation that owned and currently operates the Facility, where the violations occurred and may occur.  Defendant owned the Facility from at least January 17, 2008, until on or about September 24, 2010, when it entered into a sale-leaseback agreement for the sale of the Facility. Defendant has operated the Facility since at least January 17, 2008 and is the current operator of the Facility.

14. Defendant ceased operations at the Facility in May 2015, but plans to restart the Facility. If and when Defendant re-commences operations at the Facility, violations of the Act would occur.

15. Defendant is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e), and District PSD Rule 130(p3).

## STATUTORY AND REGULATORY BACKGROUND

16. The Clean Air Act was enacted to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).

### National Ambient Air Quality Standards

17. Section 109(a) of the Act, 42 U.S.C. § 7409(a), requires the Administrator of the EPA to publish national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408.

18. Pursuant to Section 109 of the Act, 42 U.S.C. § 7409, EPA promulgated the NAAQS at 40 C.F.R. Part 50.

19. The NAAQS establish primary air quality standards to protect public health and secondary standards to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.  42 U.S.C. § 7409(b); 40 C.F.R. § 50.2(b).

COMPLAINT

20. Pursuant to Section 107(d)(1)(A) of the Act, 42 U.S.C. § 7407(d)(1)(A), each state is required to designate those areas, or districts, within its boundaries where the air quality attains the NAAQS, fails to attain the NAAQS, or cannot be classified due to insufficient data (unclassifiable).  Areas that meet the NAAQS for a particular pollutant are designated "attainment" areas for that pollutant, while areas that do not meet the NAAQS for a particular pollutant are designated "non-attainment" areas.

21. Pursuant to Sections 108 and 109 of the Act, 42 U.S.C. §§ 7408 and 7409, EPA has identified carbon monoxide ("CO"), oxides of nitrogen ("$NO_x$") as measured by nitrogen dioxide ("$NO_2$"), and particulate matter with a diameter of 10 micrometers or less ("$PM_{10}$") as criteria pollutants and has promulgated NAAQS for these pollutants. 40 C.F.R. §§ 50.6, 50.8, and 50.11.

22. The Facility is located in Blue Lake, Humboldt County, California.  Blue Lake is located within the North Coast Air Basin and is under the jurisdiction of the District.

23. At all times relevant to this Complaint, the North Coast Air Basin has been designated as attainment or unclassified for CO, $NO_2$, and $PM_{10}$. 40 C.F.R. § 81.305.

**Prevention of Significant Deterioration Program**

24. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process. 42 U.S.C. § 7470. These provisions are referred to herein as the "PSD program."

25. As part of the PSD program, Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits "construction" of a "major emitting facility" in an area designated as attainment or unclassifiable unless a permit has been issued that comports with the requirements of Section

6

COMPLAINT

165 and the facility employs the "Best Available Control Technology" ("BACT") for each pollutant subject to regulation under the Act that is emitted from the facility.

26. Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in Section 111(a) of the Act, 42 U.S.C. §7411(a)).  "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

27. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates sources with potential to emit 250 tons per year or more of any criteria air pollutant to be "major emitting facilities."

28. Section 169(2)(A) of the Act, 42 U.S.C. § 7479(2)(A), defines "commenced as applied to construction of a major emitting facility" to mean that the owner or operator has obtained all necessary preconstruction approvals or permits required and either has "Begun or caused to begin, a continuous program of physical on-site construction of the facility" or "entered into binding agreements or contractual obligations, which cannot be canceled or modified without substantial loss to the owner or operator, to undertake a program of construction at the facility to be completed within a reasonable time."

29. Section 169(3) of the Act, 42 U.S.C. § 7479(3), defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility . . . . In no event shall application of 'best available control technology' result in emissions of any pollutants which will exceed the emissions allowed by any applicable standard established pursuant to section 7411 . . . of this title."

30. Pursuant to Section 110(j) of the Act, 42 U.S.C. § 7410(j), governing permits issued under Title I of the Act, "the owner or operator of each new or modified stationary source which

7

COMPLAINT

is required to obtain such a permit must show . . . that the technological system of continuous emission reduction which is to be used will enable such source to comply with the standards of performance which are to apply to such source and that the construction or modification and operation of such source will be in compliance with all other requirements of this chapter." Section 165(a)(3) of the Act, 42 U.S.C. § 7475(a)(3), allows issuance of a PSD permit only if "the owner or operator of such facility demonstrates, as required pursuant to section 7410(j) of this title, that emissions from construction or operation of such facility" will not compromise compliance with applicable air quality standards.

31. Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that includes, among other things, regulations to prevent the significant deterioration of air quality under Sections 161-165 of the Act, 42 U.S.C. §§ 7471-7475. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.

32. A state may comply with Section 161 of the Act, 42 U.S.C. § 7471, by having its own PSD regulations approved by EPA as part of its SIP, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166. If a state does not have a PSD program that has been approved by EPA and incorporated into the SIP, then the EPA federal PSD regulations set forth at 40 C.F.R. § 52.166 shall be incorporated by reference into the SIP. 40 C.F.R. § 52.166 (a).

33. Pursuant to Section 302(q) of the Act, 42 U.S.C. § 7602(q), an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410, and which implements the relevant requirements of the Act.  Upon EPA approval, SIP requirements are federally enforceable under Section 113 of the Act, 42 U.S.C. § 7413, and 40 C.F.R. § 52.23.

**The California State Implementation Plan**

34. Pursuant to Section 110(k) of the Act, 42 U.S.C.  7410(k), EPA approved the District's PSD rules ("District PSD Rules"), including Rules 130, 200, 220, 230, and 240, into the

8

COMPLAINT

1   District's portion of the California SIP in 1985. 50 Fed. Reg. 30,941 (July 31, 1985) and 50 Fed.

2   Reg. 19,529 (May 9, 1985).

3       35. The federally-approved California SIP is the "applicable implementation plan," within

4   the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b), governing the operations of the

5   Facility.

6       36. At various locations, the District PSD Rules incorporate by reference the federal PSD

7   regulations at 40 C.F.R. § 52.21, as amended in 1980 ("the 1980 federal PSD regulations"). 45

8   Fed. Reg. 52,735 (Aug. 7, 1980), codified in 40 C.F.R. § 52.21 (1984).

9       37. District PSD Rule 200(a) requires that an Authority to Construct ("ATC") permit be

10  obtained prior to starting construction, modification, operation, or use of any stationary or

11  indirect source which may cause, potentially cause, reduce, control, or eliminate the emission of

12  air contaminants.

13      38. District PSD Rule 130(s7) defines a stationary source as "all units of air contaminant

14  emitting articles, machines, equipment or other contrivances, which are located on adjacent or

15  contiguous properties under the control of the same person and all of which are determined by

16  the Control Officer to be related to one another through a similar product, raw material or

17  function and are included in the same industrial classification."

18      39. District PSD Rule 130(a2) defines an air contaminant, in relevant part, as "[a]ny

19  discharge, release, or other propagation into the atmosphere directly, or indirectly, caused by

20  man and includes, but is not limited to, . . . carbon, fumes, gases, odors, particulate matter, . . . ,

21  or any combination thereof."

22      40. District PSD Rule 130(m2) defines "modification" as "any physical change in, or in the

23  method of operation of any stationary source which increases the amount of any air contaminant

24  emitted into the atmosphere by that source."

25      41. District PSD Rule 130(o1) defines "operation" as "any physical action resulting in a

26  change in the location, form or physical properties of a material, or any chemical action resulting

27  in a change in the chemical composition or the chemical or physical properties of a material."

28                                                      9

COMPLAINT

42. District PSD Rule 220(b) provides that for any new or modified stationary source which the [District] estimates will result in "a significant net increase in emissions of any air contaminant regulated under the Act," BACT shall be determined for each air contaminant for which the significance level, as defined in Rule 130(s2), is exceeded.

43. District PSD Rule 130(n1) defines the "net increase in emissions" as "the amount by which the sum of any increase in actual emissions from a particular physical change or change in method of operation at a stationary source, and any other increases and decreases in actual emissions at the source that are creditable in accordance with 40 C.F.R. § 52.21(b)(3) and (21), exceeds zero."

44. District PSD Rule 130(s2) defines the significance level, in relevant part, as the potential of a new or modified stationary source to emit air contaminants that would equal or exceed 100 tons per year of CO, 40 tons per year of $NO_x$, and 15 tons per year of $PM_{10}$.

45. District PSD Rule 220(b) further provides that the District shall analyze the effect of the new or modified stationary source on air quality for each air contaminant for which the significance level is exceeded and require that the applicant comply with the preconstruction monitoring requirements in the 1980 federal PSD regulations at 40 C.F.R. § 52.21(m) (1984).

46. District PSD Rule 230(a) provides, in relevant part, that an ATC shall only be granted after the District has determined that a new or modified stationary source "has complied with all applicable federal PSD requirements at 40 C.F.R. § 52.21," will not cause deterioration of existing air quality in excess of the maximum allowable PSD increments, and employs BACT for each air contaminant for which the significance level is exceeded.

47. District PSD Rule 240(a) provides, in relevant part, that a person shall not operate or use any stationary source that may emit air contaminants without first obtaining a Permit to Operate from the District.

48. District PSD Rule 240(c) provides that no Permit to Operate shall be granted for any stationary source constructed without an ATC until the information required is presented to the District, an emission analysis is performed, and the source is altered, if necessary, and made to

10

COMPLAINT

conform with the standards set forth in  District PSD Rule 230, which incorporates the requirements of the 1980 federal PSD regulations.

**The 1980 Federal PSD Regulations**

49. The 1980 federal PSD regulations require that a new major stationary source or a major modification get a permit which states that the stationary source would meet the requirements of the federal PSD regulations prior to beginning actual construction. 40 C.F.R. § 52.21(i) (1984).

50. The 1980 federal PSD regulations require that a new major stationary source "shall apply" BACT for each pollutant subject to regulation under the Act that it would have the potential to emit in significant amounts. 40 C.F.R. § 52.21(j)(2) (1984).

51. The 1980 federal PSD regulations define "major stationary source" to mean, in relevant part, "any source which emits, or has the potential to emit, 250 tons per year or more of any air pollutant subject to regulation under the Act." 40 C.F.R. § 52.21(b)(1)(ii) (1984).

52. The 1980 federal PSD regulations define "potential to emit" to mean, in relevant part, "the maximum capacity of a stationary source to emit a pollutant under its physical and operational design." 40 C.F.R. § 52.21(b)(3) (1984).

53. The 1980 federal PSD regulations define "significant," in reference to a net emissions increase or potential to emit, to mean 100 tons per year of CO, 40 tons per year of $NO_x$, and 15 tons per year of $PM_{10}$. 40 C.F.R. § 52.21(23)(i) (1984).

54. The 1980 federal PSD regulations require that a major modification "shall apply" BACT for each pollutant subject to regulation under the Act for which it would result in a significant net emissions increase at the source. 40 C.F.R. § 52.21(j)(2) (1984).

55. The 1980 federal PSD regulations define "major modification" to mean "any physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under the Act." 40 C.F.R. § 52.21(b)(2)(i) (1984).

56. The 1980 federal PSD regulations define "net emissions increase" to mean the amount by which the sum of the following exceeds zero:  "any increase in actual emissions from a particular

11

COMPLAINT

physical change or method of operation at a stationary source" and "any other increases and decreases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i) (1984). "Actual emissions" are to be calculated in "tons per year" and should "equal the average rate . . . at which the unit actually emitted the pollutant during a two year period which precedes the particular date and which is representative of normal source operation." 40 C.F.R. § 52.21(b)(21)(ii) (1984). Actual emissions shall be calculated using the unit's "actual operating hours, production rates, and types of materials processed, stored, or combusted during the selected time period." *Id.* For a new emission unit, "actual emission shall equal the potential to emit of the unit on that date." 40 C.F.R. § 52.21(b)(21)(iv) (1984).

57. The 1980 federal PSD regulations provide that a net emissions increase is "contemporaneous with the particular change" if it occurs between the date five years before construction on the particular change commences and the date of the increase in emissions. 40 C.F.R. § 52.21(b)(3)(ii).

58. The 1980 federal PSD regulations further require that, for each pollutant emitted in significant amounts, the owner or operator of a proposed major stationary source or major modification shall: i) demonstrate that allowable emission increases from the proposed source or modification would not cause or contribute to air pollution in violation of the NAAQS; ii) model air quality; and iii) provide information necessary to perform any analysis or make any determination required under the PSD regulations, including a BACT determination. 40 C.F.R. §§ 52.21(k), (l), and (n) (1984).

**EPA Enforcement Authority**

59. A person's failure to comply with any approved regulatory provision of a SIP renders the person in violation of an applicable implementation plan and subject to enforcement under Section 113 of the Act.  40 C.F.R. § 52.23.

60. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. §

COMPLAINT

7413(b), whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a), or the provisions of any approved SIP.

61. Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), the Administrator may commence a civil enforcement action against "the owner or operator of an affected source, a major emitting facility, or a major stationary source" for an injunction and to recover per day civil penalties for each violation of the Act, including violations of a SIP.  A person who violates the Act or an applicable SIP is liable for a civil penalty of up to $37,500 per day for violations occurring after January 12, 2009, as provided for in the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.  See 40 C.F.R. Part 19; 69 Fed. Reg. 7126 (Feb. 13, 2004); 73 Fed. Reg. 75345 (Dec. 11, 2008).

**District Enforcement Authority**

62. Under California Health and Safety Code section 42403(a), the District is authorized to commence a civil action and seek civil penalties against any person who violates Part 4 (commencing with section 41500) of the California Health and Safety Code, or any rule, regulation, permit or order of a district, such as the District PSD Rules.  Said civil action may be brought in any court of competent jurisdiction.  In such civil actions, California Health and Safety Code sections 42402 through 42402.3 authorize the District to seek civil penalties in amounts ranging from One Thousand Dollars ($1,000.00) per day, per violation to Seventy-Five Thousand Dollars ($75,000.00) per day, per violation.  The District's Air Pollution Control Officer is authorized pursuant to California Health and Safety Code section 40752 to enforce Parts 3 (commencing with section 40000) and 4 of the California Health and Safety Code, all District orders, regulations, and rules, and all permit conditions imposed pursuant to California Health and Safety Code sections 42301 and 42301.10.

63. The District is also authorized to commence a civil action against a person who constructs any new or modified major emitting facility without a permit required by the Act or

13

COMPLAINT

who is alleged to have violated any condition of such permit under section 304(a)(3) of the Act, 42 U.S.C. § 7604(a)(3).  Under section 302(e) of the Act, 42 U.S.C. § 7602(e), the District is a "person" for purposes of section 304(a)(3) of the Act, 42 U.S.C. § 7604(a)(3).

## GENERAL ALLEGATIONS

64. The Facility was first constructed in 1984 by Ultrapower 3 LLC and began commercial operations in 1987.

65. At all times relevant to this Complaint, the Facility has been and is comprised of one biomass-fired boiler, one propane gas burner, two diesel compression ignition engines, various wood transportation equipment, an office building, various air quality control equipment, and a wood storage area.

66. At all times relevant to this Complaint, the Facility has been assigned a Standard Industrial Classification #4911 for Electric Services.

67. At all times relevant to this Complaint, the Facility has had and has a steam turbine rated at 11.7 megawatts (MW).

68. At all times relevant to this Complaint, the Facility has had and has the potential to emit more than 250 tons per year of pollutants subject to regulation under the Act, including, but not limited to, CO.

69. At all times relevant to this Complaint, the Facility has had and has the potential to emit over 100 tons per year of CO, 40 tons per year of $NO_x$, and 15 tons per year of $PM_{10}$.

70. At all times relevant to this Complaint, the Facility was and is a "major emitting facility" within the meaning of 42 U.S.C. § 7479(1) and a "major stationary source" within the meaning of 40 C.F.R. § 52.21(b)(1)(i)(a) (1984).

71. At all times relevant to this Complaint, the Facility was and is a "stationary source" within the meaning of District PSD Rule 130(s7).

72. On May 1, 1999, the Facility ceased operations.

73. For nine years, between 1999 and 2008, equipment at the Facility was idle and minimal maintenance was performed on the equipment.

14

COMPLAINT

74. From 2000 through 2008, the Facility reported no emissions of CO, $NO_x$, or $PM_{10}$ to the California emissions inventory and, in 2009, it was removed from California's emissions inventory.

75. Defendant acquired the Facility on January 17, 2008 and owned the Facility until on or about September 24, 2010.

76. Defendant has operated the Facility since January 17, 2008 and currently operates the Facility.

77. Between at least September 4, 2008 and April 30, 2010, Defendant undertook physical projects at the Facility in order to restart the Facility, spending over $6 million on the boiler island, electrical substation, fuel conveying system, turbine, emissions control devices, and other equipment.

78. Defendant entered into one or more contracts by August 2008 with one or more vendors to complete at least a portion of this physical work.

79. The work undertaken at the Facility between September 4, 2008 and April 30, 2010, and its subsequent restart constituted "construction" as defined in 42 U.S.C. § 7479 and "modifications" as defined in 42 U.S.C. § 7411(a) and District PSD Rule 130(m)(2).

80. Defendant restarted operations at the Facility on or around April 30, 2010.

81. In 2010, the Facility emitted 289 tons of CO, 44.8 tons of $NO_x$, and 11.6 tons of $PM_{10}$.

82. In 2011, the Facility emitted 118.7 tons of CO, 18 tons of $NO_x$, and 4.8 tons of $PM_{10}$.

83. In 2012, the Facility emitted 501.5 tons of CO, 75.4 tons of $NO_x$, and 20.1 tons of $PM_{10}$.

## CLAIM FOR RELIEF

84. Paragraphs 1 through 83 are realleged and incorporated herein by reference.

85. Defendant was required by Section 165(a) of the Act, 42 U.S.C. § 7475, to obtain a preconstruction permit, in accordance with the requirements of Section 165, 42 U.S.C. § 7475, and the District PSD Rules approved into the California SIP, because the Facility was a major emitting facility on which construction was commenced after August 7, 1977.

15

COMPLAINT

86. District PSD Rule 200(a) required Defendant to obtain an ATC permit from the District for the construction performed between July 2008 and April 2010 at the Facility and its subsequent operation, because Defendant's activities constituted construction, modification, operation, or use of a stationary source which may cause, potentially cause, reduce or eliminate the emission of air contaminants.

87. The construction, modification, and operation of the Facility resulted in a "significant net increase in emissions" of CO, $NO_x$, and $PM_{10}$ from the Facility after 2010, as defined in the 1980 federal PSD regulations at 40 C.F.R. § 52.21 b)(3)(i )(1984) and in District PSD Rules 130(n1) and 130(s2), exceeding 100 tons per year of CO, 40 tons per year of NOx, and 15 tons per year of $PM_{10}$.

88. In order to obtain an ATC, Defendant was required by District PSD Rule 230 to comply with the 1980 federal PSD regulations and to install BACT at the Facility, because the work undertaken at the Facility between July 2008 and April 30, 2010 and its subsequent restart were "major modifications," as defined in the Act and 40 C.F.R. § 52.21(b)(2)(i) (1984), and incorporated into the District's PSD Rules and the California SIP.

89. Alternatively, Defendant was required by District PSD Rule 230 to comply with the 1980 federal PSD regulations and to install BACT at the Facility, because the Facility is a new major stationary source with the potential to emit CO, $NO_x$, and $PM_{10}$ in significant amounts, as defined in 40 C.F.R. § 52.21 (1984) and District Rule 130.

90. Defendant failed to comply with the PSD requirements in the Act and the District rules approved and incorporated into the California SIP with respect to the 2008-2010 construction and operation of a new major stationary source or major modification, and subsequent operations at the Facility. Among other things, Defendant: (i) undertook construction or modification without first obtaining an ATC that included PSD requirements; (ii) failed to provide information required to make necessary determinations or analyses required by the PSD program; (iii) undertook construction or modification without undergoing a BACT determination in connection with the construction; (iv) undertook construction or modification without installing BACT for

16

COMPLAINT

1  control of CO, $NO_x$, and $PM_{10}$ emissions; (v) has failed to operate BACT for control of CO,

2  $NO_x$, and $PM_{10}$ emissions; (vi) has failed to operate in compliance with BACT emissions

3  limitations, including limitations that are no less stringent than applicable standards under

4  Section 111 of the Act; (vii) operated the Facility without first obtaining an ATC; and (viii)

5  operated the Facility without a Permit to Operate that included PSD requirements.

6    91. Defendant has violated and may continue to violate Section 165(a) of the Act, 42 U.S.C.

7  § 7475(a), and the PSD regulations contained in the federally enforceable District PSD Rules

8  approved into the California SIP.

9    92. Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and the Federal Civil

10  Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, Defendants are liable for

11  injunctive relief and for civil penalties of up to $37,500 per day for each violation occurring after

12  January 12, 2009.

13  ## **PRAYER FOR RELIEF**

14    WHEREFORE, Plaintiffs, the United States of America and the District, respectfully

15  request that this Court grant the following relief:

16    a.    Permanently enjoin Defendant from operating the Facility except in

17  accordance with the Act and any applicable regulatory requirements;

18    b.    Order the Defendant to apply for and comply with permits for the Facility

19  that are in compliance with the requirements of the PSD program, the California SIP,

20  and the District PSD Rules;

21    c.    Order the Defendant to remedy its past and ongoing violations by, among

22  other things, requiring Defendant to install and operate BACT at the Facility to

23  control emissions of CO, $NO_x$, and $PM_{10}$;

24    d.    Require Defendant to mitigate the injury to the environment caused by its

25  past non-compliance;

26

27

28                                                17

COMPLAINT

e.      Assess a civil penalty against Defendant in favor of the United States under the Act for past violations in an amount of up to $37,500 per day for violations occurring after January 12, 2009;

f.      Assess a civil penalty against Defendant in favor of the District under California Health and Safety Code sections 42402 through 42403 as follows: not more than $10,000 per day for each violation for which Defendant is strictly liable; not more than $25,000 per day for each violation where Defendant negligently emitted air pollution in violation of a District rule; not more than $75,000 per day for each violation where Defendant willfully and intentionally emitted air pollution in violation of a District rule;

g.      Award the United States and the District their costs in this action; and

h.      Grant such other and further relief as this Court deems just and proper.


Respectfully submitted,

ELLEN M. MAHAN
Deputy Section Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section


By: _____
SHEILA McANANEY (IL Bar No. 6309635)
E-mail: sheila.mcananey@usdoj.gov
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC  20044
Telephone:     (202) 616-6535
Facsimile:      (202) 616-2427

18

COMPLAINT

BRIAN J. STRETCH
Acting United States Attorney
Northern District of California

By: /s/ Michael T. Pyle
MICHAEL T. PYLE
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5087
michael.t.pyle@usdoj.gov

OF COUNSEL:

BRIAN RIEDEL
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, California 94105

NORTH COAST UNIFIED AIR QUALITY
MANAGEMENT DISTRICT

By: _____

NANCY DIAMOND
District Counsel
E-mail: ndiamond@ndiamondlaw.com
822 G Street, Suite 3
Arcata, CA 95521
Telephone: (707) 826-8540

19

COMPLAINT