Marc A. Shapp, Esq. (CA Bar No. 266805)
Justin R. Panitchpakdi, Esq. (CA Bar No. 301434)
Hunsucker Goodstein PC
3717 Mt. Diablo Blvd., Ste. 200
Lafayette, CA, 94549
(925)284-0840
mshapp@hgnlaw.com
jpanitchpakdi@hgnlaw.com

Michael D. Goodstein, Esq. (DC Bar No. 469156)
Anne E. Lynch (DC Bar No. 976226)
Hunsucker Goodstein PC
5335 Wisconsin Avenue NW, Ste. 360
Washington, DC 20015
(202)895-5380
mgoodstein@hgnlaw.com
alynch@hgnlaw.com

*Attorneys for Blue Lake Rancheria Tribe*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE LAKE POWER, LLC,<br><br>Defendant. | Case No.  3:16-cv-00961<br><br>**PROPOSED PLAINTIFF-INTERVENOR BLUE LAKE RANCHERIA TRIBE'S NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date: September 7, 2016<br>Time: 10:00am<br>Place: Courtroom 11<br>   450 Golden Gate Avenue,<br>   San Francisco, CA<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

Page

Notice of Motion to Intervene ............................................................................................................. 1

Relief Requested .................................................................................................................................. 1

Memorandum of Points and Authorities ............................................................................................. 2

    I.     Statement of Issue to be Decided ............................................................................... 2

    II.    Factual Background ................................................................................................... 2

    III.   Standard of Review .................................................................................................... 5

    IV.   The Tribe is Entitled to Intervene as a Matter of Right under Fed. R. Civ. P. 24(a)   5

        A.    The Clean Air Act Grants Any Person a Right of Intervention in an Action Brought by the United States ............................................................. 6

        B.    This Motion is Timely ................................................................................... 6

            1.    The Tribe Seeks Intervention in an Early Stage of this Proceeding ........................................................................................ 7

            2.    The Tribe's Intervention will not Prejudice the Existing Parties .... 8

            3.    The Tribe Has Good Reason to Intervene at This Stage ................. 9

        C.    Even in the Absence of a Statutory Right of Intervention, the Tribe's Interests Justify Intervention as of Right Under Fed. R. Civ. P. 24(a)(2) .......................................................................................................... 9

            1.    The Tribe Has a Protectable Interest in This Action ..................... 10

            2.    The Tribe's Interests May Be Impaired by the Disposition of this Case ....................................................................................... 10

            3.    The Existing Parties Do Not Adequately Represent the Tribe's Interests ......................................................................................... 11

    V.    In the Alternative, the Tribe Should Be Granted Permissive Intervention ........... 12

    VI.   Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Alaniz v. Tillie Lewis Foods,*
    572 F.2d 657 (9th Cir. 1978) .............................................................................................. 8

*Baughman v. Bradford Coal Co.,*
    592 F.2d 215 (3d Cir. 1979) ............................................................................................... 6

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,*
    712 F.3d 1349 (9th Cir. 2013) .......................................................................................... 12

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) .............................................................................................. 5

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ............................................................................................ 11

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
    No. 15-CV-05754-JST, 2016 WL 1394355 (N.D. Cal. Apr. 7, 2016) ................................ 7

*Defs. of Wildlife v. Johanns,*
    No. C 04-4512 PJH, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) .................................... 8

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir.1998) ............................................................................................. 10

*Fresno Cty. v. Andrus,*
    622 F.2d 436 (9th Cir. 1980) ............................................................................................ 11

*Kamakahi v. Am. Soc'y for Reprod. Med.,*
    No. 11-CV-01781-JCS, 2015 WL 1926312 (N.D. Cal. Apr. 27, 2015) ............................. 8

*N. California River Watch v. Fluor Corp.,*
    No. 10-CV-05105-MEJ, 2014 WL 3385287 (N.D. Cal. July 9, 2014) .......................... 7, 9

*Nw. Forest Res. Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) ................................................................................................ 9

*S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries Serv.,*
    No. CIVS06-2845 LKK/JFM, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) .................... 7

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .............................................................................................. 5

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) ......................................................................................... 7, 8

*United States v. Oregon,*
    745 F.2d 550 (9th Cir. 1984) ......................................................................................... 7, 8

*United States v. Pac. Gas & Elec.*,
   776 F. Supp. 2d 1007 (N.D. Cal. 2011) .............................................................................. 6

*United States v. U. S. Steel Corp.*,
   87 F.R.D. 709 (W.D. Pa. 1980)..................................................................................... 6, 9

*Winston v. United States*,
   No. 14-CV-05417-MEJ, 2015 WL 9474284 (N.D. Cal. Dec. 29, 2015) ............................ 8

**STATUTES**

42 U.S.C. § 7604 ............................................................................................................... 1, 5, 6

**OTHER AUTHORITIES**

7A C. Wright & A. Miller, Federal Practice and Procedure § 1916 (1972) .................................... 7

Comments of Senator Muskie and Senator Boggs, 116 Cong.Rec. (1970) at pp. 32902,
   32918) ............................................................................................................................ 6

S.Rep. No. 1196, 91st Cong., 2d Sess. 2, 35-36 (1970)...................................................... 6

**RULES**

Fed. R. Civ. P. 24 ................................................................................... 1, 2, 5, 6, 9, 10, 11, 12

## NOTICE OF MOTION TO INTERVENE

PLEASE TAKE NOTICE that on September 7, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11, 450 Golden Gate Avenue, San Francisco, California, the Blue Lake Rancheria Tribe will bring for hearing a motion to intervene in this action.

## RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 24(a) and (b) and Section 304(b)(1)(B) of the Clean Air Act (42 U.S.C. § 7604(b)(1)(B)), the Blue Lake Rancheria Tribe ("the Tribe") moves to intervene in the above-captioned matter as a matter of right or, in the alternative, on a permissive basis. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the proposed Complaint in Intervention filed as an exhibit herewith, and upon such other matters as may be presented to the Court at the time of the hearing. The Tribe requests that the Court allow the Tribe to participate fully in this matter as a plaintiff.

Respectfully submitted,

Dated: August 3, 2016

/s/ Justin R. Panitchpakdi
Marc A. Shapp, Esq. (CA Bar No. 266805)
Justin R. Panitchpakdi, Esq. (CA Bar No. 301434)
Hunsucker Goodstein PC
3717 Mt. Diablo Blvd., Ste. 200
Lafayette, CA, 94549
(925)284-0840
mshapp@hgnlaw.com
jpanitchpakdi@hgnlaw.com

Michael D. Goodstein, Esq. (DC Bar No. 469156)
Anne E. Lynch (DC Bar No. 976226)
Hunsucker Goodstein PC
5335 Wisconsin Avenue NW, Ste. 360
Washington, DC 20015
(202)895-5380
mgoodstein@hgnlaw.com
alynch@hgnlaw.com

*Attorneys for Blue Lake Rancheria Tribe*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Statement of Issue to be Decided**

Whether the Tribe is entitled to intervene as of right in this action under Fed. R. Civ. P. 24(a) or, in the alternative, should be granted permissive intervention under Fed. R. Civ. P. 24(b).

**II.     Factual Background**

The United States of America, on behalf of the Administrator of the U.S. Environmental Protection Agency ("EPA"), and the North Coast Unified Air Quality Management District ("NCUAQMD") (together, the "Existing Plaintiffs") initiated this action against Blue Lake Power, LLC ("Blue Lake Power") on February 26, 2016 with respect to air quality law violations at Blue Lake Power's biomass-fired electric generating plant in Blue Lake, California (the "Facility").

The Facility is located less than a half mile from the Tribe's trust lands, and has caused significant health, property, and safety impacts to the Tribe and its members for nearly three decades. Many tribal elders and other Rancheria residents have suffered related health impacts including breathing and heart problems, chronic respiratory illnesses, pneumonia, and asthma. Pollution from the facility, including particulate matter, noise, light, lead, arsenic, and ammonia, has resulted in substantial property and cultural impacts to the Tribe and its members. (Declaration of Justin R. Panitchpakdi, ¶ 3, Exhibit B at 5.)  Tribe members have registered hundreds of complaints regarding fine, dark-colored particulate matter blanketing their houses, cars, vegetation, and window sills with an oily texture that makes it very difficult to remove. *Id.*

The 1980s-era Facility was acquired by Blue Lake Power on January 17, 2008 after having been idle between April of 1999 and January of 2008. Blue Lake Power has operated the Facility since January of 2008, and is the current operator of the facility. Between at least September 4, 2008 and April 30, 2010, Blue Lake Power undertook a number of major physical projects at the Facility in preparation to restart the Facility.  (Dec. ¶ 3, Exh. B at 3) With respect to these projects, Blue Lake Power did not apply for or obtain a preconstruction permit or an Authority to Construct permit.  (*Id.*)

Blue Lake Power began testing the Facility in December of 2009 and restarted operation

of the Facility in April of 2010. Between April of 2010 and May of 2011, Blue Lake Power was issued numerous Notices of Noncompliance for violating District, state, and federal laws. On May 20, 2011, Blue Lake Power entered into a Settlement Agreement with the NCUAQMD that included one million three hundred eighty thousand dollars ($1,380,000) in civil penalties related to the violations at the Facility. (Dec. ¶ 3, Exh. B at 3)

On March 3, 2014, the EPA issued a Finding and Notice of Violation against Blue Lake Power, alleging numerous additional violations of the Clean Air Act at the Facility. Despite this notice, Blue Lake Power has continued to operate the Facility at times after the March 3, 2014 EPA Notice of Violation. (Dec. ¶ 3, Exh. B at 4)

In part as a result of the Notice of Violation, the Existing Plaintiffs brought this action. The Complaint alleges numerous violations at the Facility of the Clean Air Act ("CAA") as well as the State of California's State Implementation Plan ("SIP") and the federally approved district regulations that are incorporated into the SIP. (Complaint. at ¶¶ 84-92, Dkt. 1.) The allegations include multiple violations taking place between 2008 and 2012, as well as ongoing violations, including failure to obtain a preconstruction permit and Authority to Construct ("ATC"), failure to install Best Available Control Technology ("BACT") at the facility pursuant to the Prevention of Significant Deterioration ("PSD") standards, failure to comply with the "major modification" and/or "new major stationary source" standards under the PSD rules, and failure to operate the facility in compliance with BACT emissions limitations. (Compl. at ¶¶ 85-86, 88-90.) In addition to the injunctive relief sought by the Existing Parties, the EPA requests civil penalties up to $37,500 per day for each of these violations, and the NCUAQMD seeks up to an additional $10,000 to $75,000 per day for each violation. (*Id.* at 17-18)

The civil penalties requested by the Existing Parties relate to Blue Lake Power's major modifications to the Facility that occurred from January of 2008 until initial operation of the Facility in December of 2009, a 24-month period; as well as Blue Lake Power's operation of the Facility from December of 2009 until May of 2015, a 65-month period. (Compl. at ¶ 77, 79-81, 84-92.)

The Existing Plaintiffs filed concurrently with their complaint a Proposed Consent Decree

1  that will potentially settle their claims against Blue Lake Power. The Proposed Consent Decree
2  contains a total of only $5,000 in civil penalties related to the allegations in the complaint.
3  (Proposed Consent Decree ¶ 8, Dkt. 2.) The Existing Plaintiffs justify the low penalty amount in
4  the Proposed Consent Decree with a determination that Blue Lake Power "has a limited ability to
5  pay a civil penalty in this matter." (*Id.* at 1.)
6        The EPA stated, at a March 23, 2016 meeting with the Tribe, that the total cost of the
7  pollution control upgrades required in the Consent Decree will be approximately $700,000, many
8  times the amount of the civil penalty that is justified by Blue Lake Power's "inability to pay."
9        The Tribe and its legal counsel each submitted comments to EPA regarding the Proposed
10 Consent Decree on April 4, 2016, included here as Exhibits A and B.  (Dec. ¶¶ 3-4.) Those
11 comments, among other things, requested that EPA withdraw its support for the Proposed
12 Consent Decree:

> on the grounds that it is unfair, inadequate, unreasonable, and not in the public interest, because, *inter alia*: (1) the penalties assessed to Blue Lake Power are inadequate, unreasonable, and fail to conform with the EPA's "Clean Air Act Stationary Source Civil Penalty Policy" and the "Penalty Policy for Violations of Certain Clean Air Act Permit Requirements for the Construction or Modification of Major Stationary Sources of Air Pollution;" (2) the EPA, in negotiating the Consent Decree, has failed to adequately perform its trust responsibilities owed to the Tribe; (3) the protocols for particulate matter testing are inadequate; (4) all of the timelines provided for in the Consent Decree are too lenient; and (5) the Consent Decree should, but does not, provide for enhanced opacity limitations.

20 (Dec. ¶¶ 3 - 4, Exhs. B - C.) The Bureau of Indian Affairs ("BIA") also filed comments in its
21 capacity as the federal trustee for the Tribe requesting that the EPA "consider the Tribe's public
22 health and environmental concerns carefully prior to moving forward with the consent decree."
23 (Dec. ¶ 5 Exh. D at 1.) The BIA questioned "whether Blue Lake Power has the financial capacity
24 to comply and remain in compliance with the Clean Air Act after restarting the plant," and noted
25 that "the civil penalties and environmental mitigation [in the Proposed Consent Decree] seem de
26 minimis compared to the public health and environmental consequences of community members
27 living near the Blue Lake Power facility. (*Id.*)
28       Despite numerous requests by the Tribe, EPA has not modified the Proposed Consent

1  Decree to address the Tribe's concerns. The Tribe does not believe a $5,000 penalty is
2  appropriate for multiple years of concurrent violations of the Clean Air Act, and has repeatedly
3  shared this opinion with the Existing Plaintiffs.  (*See* Dec. ¶¶3-4, Exhs. B – C.) Likewise, the
4  Tribe has serious doubts that Blue Lake Power will ever be able to operate the Facility in
5  compliance with the law if its condition is such that a penalty greater than $5,000 would cause a
6  serious financial hardship. As is explained below, the Tribe's proposed intervention herein is
7  necessary to assure that the interests of the Tribe, and the surrounding areas around the Facility
8  are adequately protected, and in light of EPA's unwillingness to fully protect the Tribe, its
9  members, and local interest or to require more appropriate measures to bring a Facility with a
10  long history of violations into compliance with the law.

11  **III.     Standard of Review**

12  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene,
13  the proposed complaint or answer in intervention, and declarations supporting the motion as true
14  absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d
15  810, 820 (9th Cir. 2001).

16  **IV.     The Tribe is Entitled to Intervene as a Matter of Right under Fed. R. Civ. P. 24(a)**

17  The Tribe may intervene as a plaintiff in this action as a matter of right pursuant to Fed. R.
18  Civ. P. 24(a)(1), which provides that "[o]n timely motion, the court must permit anyone to
19  intervene who[] is given an unconditional right to intervene by a federal statute." Here, Section
20  304(b)(1)(B) of the Clean Air Act (42 U.S.C. § 7604(b)(1)(B)) provides such an unconditional
21  right and is the basis for the Tribe's intervention.

22  Even if the Tribe did not enjoy a statutory right of intervention in this matter, however, it
23  would nevertheless be entitled to intervene under Fed. R. Civ. P. 24(a)(2) based on its
24  considerable interest in the subject of the action. Rule 24(a)(2) is construed liberally in favor of
25  potential intervenors, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir.
26  2006), and allows intervention by anyone who "claims an interest relating to the property or
27  transaction that is the subject of the action, and is so situated that disposing of the action may as a
28  practical matter impair or impede the movant's ability to protect its interest, unless existing parties

adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

Here, and as explained below, the Tribe has an interest in addressing Blue Lake Power's Clean Air Act violations because those violations impact the Tribe's members' health, safety, and property, and the Tribe's interest is not adequately represented by the existing parties to this action.

### A. The Clean Air Act Grants Any Person a Right of Intervention in an Action Brought by the United States

Sections 304(a)(1) and 304(b)(1)(B) of the Clean Air Act (42 U.S.C. §§ 7604(a)(1) and 7604(b)(1)(B)) authorize the filing of a citizen suit against "any person . . . who is alleged to have violated . . . an emission standard or limitation under [the Clean Air Act] . . . or . . . an order issued by the Administrator or a State with respect to [a] standard or limitation [under the Clean Air Act]." Such citizen suits are barred, however, where EPA is "diligently prosecuting a civil action . . . ," except that citizens may intervene as of right in those actions. 42 U.S.C. § 7604(b)(1)(B). The plain language of Section 304 allows a citizen to intervene as of right in order to enforce compliance with the Clean Air Act. *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1017 (N.D. Cal. 2011). This right of intervention "replaces a citizen's right to bring an action in cases already pending," *United States v. U. S. Steel Corp.*, 87 F.R.D. 709, 710 (W.D. Pa. 1980), and is intended "to both goad the responsible agencies to more vigorous enforcement of the anti-pollution standards and, if the agencies remain[] inert, to provide an alternate enforcement mechanism." *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 218 (3d Cir. 1979) (*citing* S.Rep. No. 1196, 91st Cong., 2d Sess. 2, 35-36 (1970); Comments of Senator Muskie and Senator Boggs, 116 Cong.Rec. (1970) at pp. 32902, 32918)). The Tribe's proposed intervention not only meets the statutory standard provided in Section 304(b)(1)(B), but is also grounded in policy interests undergirding the intervention right Congress provided. The Tribe seeks intervention to argue for more vigorous enforcement of the Clean Air Act against Blue Lake Power than has been demonstrated in the Proposed Consent Decree.

### B. This Motion is Timely

The Tribe's intervention herein is timely because this matter is still in its initial stages,

1  intervention will not prejudice the other parties, and the Tribe has good reason to intervene at this
2  point. The timeliness of intervention is a determination committed to the Court's discretion, but,
3  in general, three factors weigh on the issue: (1) the stage of the proceeding at which an applicant
4  seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the
5  delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). "The timeliness
6  requirement for intervention as of right should be treated more leniently than for permissive
7  intervention because of the likelihood of more serious harm" and "[m]ere lapse of time alone is
8  not determinative." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (*citing* 7A C.
9  Wright & A. Miller, Federal Practice and Procedure § 1916 (1972)). The Tribe satisfies each of
10 the three timeliness factors, and should therefore be granted intervention.

          1.      <u>The Tribe Seeks Intervention in an Early Stage of this Proceeding</u>

12       The Tribe's intervention comes at an early stage in the case. No case management
13 conference has yet taken place. No discovery has taken place. The Existing Parties have not
14 moved the court to enter the Proposed Consent Decree as a final judgment. The stage of
15 proceeding requirement is met where, as is the case here, no substantive proceedings have
16 occurred. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 15-CV-05754-JST,
17 2016 WL 1394355, at *2 (N.D. Cal. Apr. 7, 2016) (stage of proceedings factor satisfied where
18 "[d]efendants had not yet filed a response to the complaint"); *N. California River Watch v. Fluor*
19 *Corp.*, No. 10-CV-05105-MEJ, 2014 WL 3385287, at *15 (N.D. Cal. July 9, 2014) (stage of
20 proceedings factor satisfied where motion to dismiss had been filed, discovery had yet to
21 commence, and the Court not significantly engaged the issues); *S. Yuba River Citizens League &*
22 *Friends of the River v. Nat'l Marine Fisheries Serv.*, No. CIVS06-2845 LKK/JFM, 2007 WL
23 3034887, at *12 (E.D. Cal. Oct. 16, 2007) (appropriate stage for intervention is before
24 "significant substantive rulings have been made"). Here, the court has not made any substantive
25 rulings, discovery has not started, the defendant has not responded to the complaint, and the order
26 setting a case management conference has been vacated at the request of the existing parties. But
27 for the lapse of time, which is not determinative of the stage of the proceedings, this action is in
28 the same posture as the day it was filed.

1    Furthermore, the Tribe seeks to intervene now because it has a particular interest in the
2 upcoming stage of the proceeding—the question of whether the court should enter the Proposed
3 Consent Decree as a final judgment. "[A] party's interest in a specific phase of a proceeding may
4 support intervention at that particular stage of the lawsuit," even where—unlike the case here—
5 the litigation is no longer in the early stages. *Kamakahi v. Am. Soc'y for Reprod. Med.*, No. 11-
6 CV-01781-JCS, 2015 WL 1926312, at *4 (N.D. Cal. Apr. 27, 2015) (*citing Alisal Water Corp.*,
7 370 F.3d at 921).

### 2. The Tribe's Intervention will not Prejudice the Existing Parties

9    Prejudice to the existing parties is "the most important consideration in deciding whether a
10 motion for intervention is untimely." *Oregon*, 745 F.2d at 552. When considering prejudice to
11 existing parties, the Court must consider "whether existing parties may be prejudiced by the delay
12 in moving to intervene," but need not consider "whether the intervention itself will cause the
13 nature, duration or disposition of the lawsuit to change." *Defs. of Wildlife v. Johanns*, No. C 04-
14 4512 PJH, 2005 WL 3260986, at *4 (N.D. Cal. Dec. 1, 2005). Factors to consider in assessing
15 prejudice include "loss of evidence, settlements made in expectation of no further claims, and the
16 need to reopen matters previously resolved." *Winston v. United States*, No. 14-CV-05417-MEJ,
17 2015 WL 9474284, at *3 (N.D. Cal. Dec. 29, 2015).

18    The Tribe's intervention herein will not prejudice the existing parties to this proceeding
19 because the existing parties have not yet moved the Court to consider the Proposed Consent
20 Decree. *See Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978) (prejudice would
21 occur if intervention was allowed *after* consent decree was approved and already being fulfilled).
22 Likewise, no evidence has been presented, and the Court has resolved none of the claims raised in
23 the complaint.

24    Because the Tribe has already voiced its concerns with the Proposed Consent Decree
25 through the administrative process by filing comments with EPA and through government-to-
26 government consultation with the United States, the Existing Plaintiffs will not be prejudiced by
27 the Tribe's participation now. Indeed, the Tribe had good reason to first pursue this administrative
28 path to see whether EPA would modify the consent decree in response to its comments. Having

1 received no commitment from EPA to modify the Proposed Consent Decree in response to the
2 comments it received from the Tribe and the BIA, the Tribe does not now prejudice EPA by
3 seeking judicial resolution of its concerns with the Proposed Consent Decree.

4         3.     The Tribe Has Good Reason to Intervene at This Stage

5       The Tribe moves to intervene in the current stage of the action because it has received no
6 indication from EPA that the United States is planning to modify the Proposed Consent Decree to
7 address the Tribe's comments. Intervention at this stage is necessary to protect the Tribe's
8 interests now that it has become clear that the United States will not do so. "[I]t would be a
9 wasteful policy to require a potential party to [a Clean Air Act enforcement action] to intervene at
10 a time when it is satisfied with the progress of the case merely in order to preserve its right to
11 object to later, unsatisfactory modifications." *U. S. Steel Corp.*, 87 F.R.D. at 710. The Tribe has
12 diligently pursued administrative remedies in this matter, but has not received satisfaction from
13 EPA. At this point it is clear that the Tribe must represent its own interests in this action, and thus
14 intervention has become necessary. *See N. California River Watch* at *15 ("The key date for
15 assessing the timeliness of a motion to intervene is the date that the applicant should have been
16 aware that its interests would no longer be adequately represented by one of the existing
17 parties.").

18     **C.**     **Even in the Absence of a Statutory Right of Intervention, the Tribe's Interests Justify Intervention as of Right Under Fed. R. Civ. P. 24(a)(2)**
19

20       Even in the absence of the statutory basis for intervention as of right provided by the
21 Clean Air Act's Citizen Suit provision, which alone provides sufficient grounds for intervention,
22 the Tribe meets the standard four-part test for intervention under Fed. R. Civ. P. 24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the transaction; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit.

27 *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as amended on denial of*
28 *reh'g* (May 30, 1996) (internal quotations and citations omitted). The timeliness of this motion is

1  addressed above with respect to the Tribe's statutory right of intervention under Fed. R. Civ. P.
2  24(a)(1).

### 1. The Tribe Has a Protectable Interest in This Action

4  The Tribe and its members have a protectable interest in this action because they are and will be impacted by the emissions from Blue Lake Power's facility. "An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir.1998).

The Tribe's interest in clean air is protected by the Clean Air Act, under which, as explained above, the Tribe is empowered to seek redress through the citizen suit provision in Section 304. The Tribe similarly has legal interests in clean air that are protected under common-law theories of liability such as nuisance and trespass, as well as interests under state law and Tribal law. The Tribe's interests are particularly acute considering that approximately seventy-five percent of the Tribe's membership is comprised of elders and children, who are more likely to be affected by pollutants such as the particulate matter and other constituents that are emitted from the Blue Lake Power Facility. Since the Facility resumed operation around 2010, the Tribe's members have registered hundreds of complaints regarding the air emissions from the Facility, which have been aggregated and forwarded to the Existing Plaintiffs. (Dec. at ¶ 3, Exh. B at 5)

The Tribe's protectable interests are directly related to the claims at issue in this action—whether Blue Lake Power continues to operate outside the limitations imposed by the Clean Air Act and California's implementation thereof, and other legal and regulatory requirements—depend largely on the terms and conditions imposed under any consent decree that is approved in this matter. The Tribe's interests in protecting its members, land, and other resources from harmful air pollution and in preserving their right to participate in future proceedings regarding any agreement settling Blue Lake Power's violations are sufficient to support its right to intervene in this case.

### 2. The Tribe's Interests May Be Impaired by the Disposition of this Case

The disposition of the case has the potential to impair the Tribe's interests because the

1  Proposed Consent Decree is insufficient to ensure safe operation of the Blue Lake Power Facility.
2  The Facility has a long history of non-compliance with clean air laws, and the *de minimis* penalty
3  in the Proposed Consent Decree would likely do little to improve performance at the facility.
4  Unless the Tribe participates in this action it has few other options to ensure lawful and safe
5  operation of the Blue Lake Power facility. "If an absentee would be substantially affected in a
6  practical sense by the determination made in an action, he should, as a general rule, be entitled to
7  intervene . . . ." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th
8  Cir. 2011) (*quoting* Fed. R. Civ. P. 24 advisory committee's note). As an example of the impacts
9  to Blue Lake, should the Proposed Consent Decree be approved with its current terms, the Blue
10 Lake Power Facility apparently will be allowed to resume operation before coming into
11 compliance with the applicable emissions limitations. The resulting emissions during this period
12 would have a direct and substantial impact on the Tribe and its members.

13              3.      <u>The Existing Parties Do Not Adequately Represent the Tribe's Interests</u>

14      Neither of the Existing Plaintiffs will represent the Tribe's interests in this case because
15 they do not take the Tribe's position on the Proposed Consent Decree. Representation by another
16 party is adequate only where: "(1) the interests of a present party to the suit are such that it will
17 undoubtedly make all of the intervenor's arguments; (2) the present party is capable of and willing
18 to make such arguments; and (3) the intervenor would not offer any necessary element to the
19 proceedings that the other parties would neglect." *Fresno Cty. v. Andrus*, 622 F.2d 436, 438-39
20 (9th Cir. 1980). EPA has not indicated to the Tribe that it intends to modify the Proposed Consent
21 Decree in response to the Tribe's comments thereto. EPA, therefore, will not be in a position to
22 make the Tribe's arguments regarding the consent decree and the underlying violations.
23 Similarly, NCUAQMD has signed on to the Proposed Consent Decree and has not indicated that
24 it has any intention of seeking more significant penalties or more stringent compliance
25 requirements than what are proposed in that document.
26      In order for its arguments regarding the inadequacy of the Proposed Consent Decree to be
27 heard, as well as ensure full protection of the local community from unlawful and unsafe impacts
28 from the Facility, the Tribe must participate in this action directly.  Likewise, the Tribe's state

law, common law, and Tribal law claims for relief in its Complaint in Intervention are not represented by the Existing Plaintiffs.

## V. In the Alternative, the Tribe Should Be Granted Permissive Intervention

In the alternative, the Tribe seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Permissive intervention under Rule 24(b) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (internal quotation and citation omitted). Here, federal question jurisdiction exists under the Clean Air Act, this motion is timely for the reasons stated above, and there are common issues of law and fact all related to Blue Lake Power's construction and operation of the Facility. Furthermore, the Tribe's participation will not prejudice any party, nor will it unduly delay these proceedings.

## VI. Conclusion

For the foregoing reasons, the Tribe respectfully requests that the Court grant its motion to intervene. As required by Fed. R. Civ. P. 24(c), this motion is "accompanied by a pleading that sets out the claim or defense for which intervention is sought," which is attached as Exhibit 4.

Respectfully submitted,

Dated: August 3, 2016
/s/ Justin R. Panitchpakdi
Marc A. Shapp, Esq.
CA Bar No. 266805
Justin R. Panitchpakdi, Esq.
CA Bar No. 301434
Hunsucker Goodstein PC
3717 Mt. Diablo Blvd., Ste. 200
Lafayette, CA, 94549
(925)284-0840
mshapp@hgnlaw.com
jpanitchpakdi@hgnlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      Michael D. Goodstein, Esq.
      DC Bar No. 469156
      Anne E. Lynch
      DC Bar No. 976226
      Hunsucker Goodstein PC
      5335 Wisconsin Avenue NW, Ste. 360
      Washington, DC 20015
      (202)895-5380
      mgoodstein@hgnlaw.com
      alynch@hgnlaw.com

      *Attorneys for Blue Lake Rancheria Tribe*