ELLEN M. MAHAN
Deputy Section Chief
SHEILA McANANEY
Illinois Bar No. 6309635
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 616-6535
Facsimile: (202) 616-2427 (Fax)
Email: sheila.mcananey@usdoj.gov
*Attorneys for the United States*

NANCY DIAMOND (Bar No. 130963)
District Counsel
Law Offices of Nancy Diamond
822 G Street, Suite 3
Arcata, CA 95521
Telephone: (707) 826-8540
ndiamond@ndiamondlaw.com
*Attorney for Plaintiff North Coast Unified Air Quality Management District*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT, Plaintiffs, v. BLUE LAKE POWER, LLC, Defendant. | No. 3:16-cv-00961-JD **PLAINTIFFS' RESPONSE TO BLUE LAKE RANCHERIA'S MOTION TO INTERVENE** Hearing Date: September 8, 2016 Hearing Time: 10:00am Judge: Hon. James Donato |

TABLE OF CONTENTS

I. STATEMENT OF ISSUES TO BE DECIDED....................2

II. FACTUAL BACKGROUND....................2

A. Description of Facility at Issue and Claims Alleged in the Complaint....................2

B. History of Enforcement Action and Negotiations with Defendant....................5

C. The Proposed Consent Decree....................6

D. Public Comment Period on Proposed Consent Decree....................7

E. Post-Lodging Meetings with the Tribe and the Tribe's Motion to Intervene....................8

III. ARGUMENT....................9

A. Limits on the Proposed Intervenors' Intervention are Necessary and Appropriate Where a Consent Decree is Lodged with the Court....................10

B. The Court Should Require the Tribe to File a Complaint in Intervention Limited to the Common Clean Air Act Claims Before Allowing It to Participate in this Case....................11

C. At this Stage of Proceedings, the Court Should Limit the Tribe's Intervention to Participation in Briefs, Hearings, and Appeals Regarding any Motion to Enter the Proposed Consent Decree....................14

CONCLUSION....................15

TABLE OF AUTHORITIES

CASES

*Alaniz v. California Processors, Inc.*, 73 F.R.D. 269 (N.D. Cal. 1976)......................................10

*Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351 (5th Cir. 1997)........................................10

*Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1 (D.D.C. 2009).............11

*Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117 (D.C. Cir. 1983)....................................14

*Cnty. Of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007).................................11

*District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227 (D.D.C. 2011)............14

*Forest Cty. Potawomie Comm'y v. United States*, -- F.R.D. ---, 2016 WL 1465324, (D.D.C., Apr. 14, 2016)...........................................................11

*Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003).......................................................11

*Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141 (S.D. Cal. 1954)............................................11

*Nat. Res. Def. Council v. Evans*, 279 F. Supp.2d 1129 (N.D. Cal. 2003)....................................13

*San Juan Cnty, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007)........................................10

*Sherman v. United States*, 801 F.2d 1133 (9th Cir. 1986)............................................................9

*Shore v. Parklane Hosiery Co., Inc.*, 606 F.2d 354 (2d Cir. 1979).............................................10

*Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979).........................................................15

*United States v. Chevron U.S.A. Inc.*, 380 F. Supp. 2d 1104 (N.D. Cal. 2005)............................15

*United States v. City of Detroit*, 712 F.3d 925 (6th Cir. 2013).....................................................11

*United States v. Ketchikan Pulp Co.*, 430 F. Supp. 83 (D. Alaska 1997)....................................15

*United States v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-386-KSF, 2007 WL 2020246 (E.D. Ky. July 6, 2007)..........................................................12

*United States v. McInnes*, 556 F.2d 436 (9th Cir. 1977)..............................................................15

*United States v. Metro Dist. Comm'n*, 679 F. Supp. 1154 (D. Mass. 1988), *aff'd* 865 F.2d 2 (1st Cir. 1989)..........................................................................9

*United States v. Montrose Chem. Corp.*, 50 F.3d 741 (9th Cir. 1995)........................................14

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990)..........................................................14

*United States v. Pacific Gas & Elec.*, 776 F. Supp. 2d 1007 (N.D. Cal. 2011)............................12

*United States v. South Fla. Water Mgmt Distr.*, 922 F.2d 704 (11th Cir. 1991)...........................10

*Vinson v. Washington Gas Light Co.*, 321 U.S. 489 (1944)...................................................9, 11

*Wolin v. City of Los Angeles*, 524 Fed. Appx. 331 (9th Cir. 2013).............................................13

STATUTES

33 U.S.C. § 1356(b)..........................................................................................................9

Clean Air Act, 42 U.S.C. §§ 7401 through 7671q

Section 111(a)(4); 42 U.S.C. § 7411(a)(4)...............................................................3

Section 113(a); 42 U.S.C. § 7413(a).........................................................................5

Section 165(a)(1); 42 U.S.C. § 7475(a)(1)...............................................................3

Section 165(a)(4); 42 U.S.C. § 7475(a)(4)...............................................................3

Section 169(2)(C); 42 U.S.C. § 7479(2)(C)..............................................................3

Section 304(b); 42 U.S.C. § 7604(b).........................................................................9

Section 304(b)(1)(B); 42 U.S.C. § 7604(b)(1)(B)....................................................10

REGULATIONS

28 C.F.R. § 50.7...............................................................................................................7

40 C.F.R. § 51.166.............................................................................................................3

North Coast Unified Air Quality Management District Regulations

District Regulation 1-1, § 130(m2).........................................................................4

District Regulation 1-1, § 130(s2)...........................................................................4

District Regulation 1-2, § 220(b)............................................................................4

RULES

Fed. R. Civ. P. 24 1996 advisory committee notes....................9, 10

Fed. R. Civ. P. 24(a)....................9, 10

Fed. R. Civ. P. 24(b)....................10

MISCELANEOUS

81 Fed. Reg. 11,591 (March 4, 2016)....................7

Plaintiffs, the United States of America ("United States") and North Coast Unified Air Quality Management District (the "District") (together, the "Governments"), file this response to the Blue Lake Rancheria's ("Tribe") Motion to Intervene (ECF No. 17) ("Motion"). In addition to asserting citizen suit claims for violations of the Clean Air Act ("CAA" or the "Act") paralleling the allegations in the Governments' Complaint (ECF No. 1), the Tribe's proposed Complaint asserts a set of separate and distinct claims under state and tribal law seeking relief for personal injuries including damage to property and persons.[1] (ECF No. 17-1). The Governments do not object to the Motion to Intervene, conditioned upon reasonable limits being placed upon the Tribe's participation, which is appropriate given the procedural posture of this case.

Concurrently with the Complaint (ECF No. 1), the United States lodged with this Court a proposed Consent Decree that would resolve the Governments' CAA claims against the Defendant related to its operation of a biomass-fired electric generating facility ("Facility"). The United States received approximately 26 public comments on the proposed Consent Decree, including three separate sets of substantive comments by the Tribe, and is still considering public comments on the proposed Consent Decree. The United States has not yet decided whether to seek the Court's approval and entry of the Consent Decree. If the United States seeks entry of the proposed Consent Decree by the Court, the standard for the Court's review will be whether the proposed Decree is fair, reasonable, adequate, and consistent with the CAA and the public interest. Many of the issues raised by the Tribe's Motion can be addressed more efficiently and

[1] More specifically, the Second through Fifth, and Seventh causes of action in the Rancheria's Proposed Complaint in Intervention allege state law claims for private nuisance, public nuisance, trespass, negligence, and equitable indemnity. (ECF No. 17-1). The Sixth cause of action states a claim for violation of the Blue Lake Rancheria Air Quality Ordinance. *Id.*

in a more concrete setting after the comment review process is complete and the United States has decided whether to seek entry of the Consent Decree by this Court.

Thus, if the Court allows the Tribe to intervene at this stage of proceedings, the Governments ask that the Court limit the scope of intervention to: (1) filing a Complaint in intervention that is limited to the CAA violations paralleling the allegations in the Governments' Complaint (ECF No. 1); (2) filing legal briefs in response to a motion to enter the proposed Consent Decree, should the United States seek to enter the proposed Decree, and participating in oral arguments if the Court requests such; and (3) filing an appeal if the Consent Decree is entered by the Court over the Tribe's objections. Such limitations would sufficiently protect the Tribe's asserted interests, while preserving the strong policy in favor of settlements. Should the Governments decide to withdraw from the proposed Consent Decree, the Governments would not oppose full participation by the Tribe in the ensuing litigation of the common CAA claims.

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether, if the Court grants the Tribe's Motion to Intervene under Rule 24, the Court should also exercise it authority to impose reasonable limits on the scope of that intervention in order to ensure the efficient conduct of the proceedings, including limiting the Tribe's intervention to the common CAA claims alleged in the Governments' Complaint and, at this stage, permitting the Tribe to participate in briefing and oral argument to oppose the proposed Consent Decree if the United States seeks entry of the Decree.

## II. FACTUAL BACKGROUND

### A. Description of Facility at Issue and Claims Alleged in the Complaint

On February 26, 2016, following several years of agency investigation and settlement negotiations, the Governments filed this action under the Clean Air Act against Defendant Blue

Lake Power LLC ("Defendant"). (ECF No. 1). The Governments also lodged a proposed Consent Decree that would resolve the allegations set forth in the Complaint. (ECF No. 2-1). The claims addressed in the Complaint and the proposed Consent Decree relate to Defendant's operation of a biomass-fired electric generating plant (the "Facility") located in the City of Blue Lake, California. (ECF No. 1 at ¶ 1).

It appears undisputed that the Facility, which produces electricity for the grid, began operations in the mid-1980s. (ECF No. 17-1, Exhibit B at 2) (Declaration of Mark Sims ("Sims Dec.") ¶ 4). As part of its operations, the Facility emits carbon monoxide ("CO"), oxides of nitrogen ("$NO_x$"), and particulate matter with a diameter less than 10 micrometers ($PM_{10}$), each of which is a pollutant regulated by the Clean Air Act. (ECF No. 1 at ¶ 69). In 1999, Ultrapower ceased operations at the Facility. *Id.* at ¶ 72. In 2008, Defendant purchased the Facility, which had been idle for the previous nine years. *Id.* at ¶¶ 74-75. Between at least September 4, 2008 and April 30, 2010, Defendant performed a number of physical projects at the Facility, costing over $6 million, in order to restart the Facility. *Id.* at ¶ 77. The Complaint alleges that Defendant restarted operations at the Facility on or around April 30, 2010. *Id.* at ¶ 80.

Under the Clean Air Act's Prevention of Significant Deterioration ("PSD") program, "[n]o major emitting facility . . . may be constructed" or modified without obtaining a permit setting forth emission limitations and must be subject to the "best available control technology" ("BACT") for each pollutant subject to regulation. 42 U.S.C. § 7475(a)(1), (4). The Act defines the term "construction" to include a "modification," 42 U.S.C. § 7479(2)(C), which in turn is defined to mean "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4).

The Act requires each state to have a State Implementation Plan ("SIP") to meet PSD and other CAA requirements, and the U.S. Environmental Protection Agency ("EPA") has promulgated regulations that establish minimum standards for the approval of such plans. *See* 40 C.F.R. § 51.166. The applicable PSD regulations, which are found in the federally-approved District PSD Rules and incorporated into the California SIP, require that a BACT analysis be conducted for any new or modified source that is estimated to result in a "significant" net increase in emissions of a pollutant. District Regulation 1-1, Section 130(m2) and Regulation 1-2, Section 220(b).[2] "Significant" means a rate of emissions that would equal or exceed any of the following rates for the following pollutants: CO: 100 tons per year; $NO_x$: 40 tons per year; and $PM_{10}$, 15 tons per year. District Regulation 1-1, Section 130(s2).

Since its construction, the Facility has been a "major emitting facility" and a "major stationary source" under the Act. (ECF No. 1, ¶¶ 68, 70). Furthermore, the Facility has had, and continues to have, the potential to emit over 100 tons per year of CO, 40 tons per year of NOx, and 15 tons per year of $PM_{10}$. (ECF No. 1, ¶ 69). As alleged in the Complaint, the work undertaken at the Facility between July 2008 and April 30, 2010 and the Facility's subsequent restart were "major modifications," as defined in the Act, its implementing regulations, and the District PSD Rules, because the restart resulted in an "significant net increase in emissions" of CO, $NO_x$, and $PM_{10}$. (ECF No. 1, ¶ 87). The Complaint therefore alleges that the Defendant was required by the District PSD Rules and the Act to obtain a PSD permit that included 2008 BACT

[2] The federally-approved District Rules can be found on EPA's website at http://yosemite.epa.gov/r9/r9sips.nsf/Agency?ReadForm&count=500&state=California&cat=North+Coast+Unified+AQMD-Agency-Wide+Provisions

emission limits and install control equipment that represented BACT for CO, $NO_x$, and $PM_{10}$.[3] *Id.* at ¶ 88, 90. The Complaint alleges that Defendant's failure to obtain the permit and subsequent operation of the Facility is a violation of the PSD requirements in the Act and the District Rules approved and incorporated into the California SIP. *Id.* at ¶¶ 90-91.

**B. History of Enforcement Action and Negotiations with Defendant**

Acting under the authority conferred by Section 113(a) of the Act, 42 U.S.C. § 7413(a), EPA issued a Notice of Violation to the Defendant on March 3, 2014 and met with the Defendant in an effort to resolve the alleged violations. EPA also issued two formal information requests relating to the Facility between July 16, 2013 and January 8, 2014, regarding the scope and costs of the work performed by Defendant at the Facility between 2008 and 2010. (Sims Dec., ¶ 5). The proposed Consent Decree is the culmination of a years-long process of extensive fact-finding, settlement discussions, and independent agency evaluation of the potential case against the Defendant. The investigatory process by EPA included analysis of the information submitted by the Defendant in response to formal information requests and informal requests in settlement discussions between the United States, the District and Defendants; internal governmental deliberations; and communications with the Tribe.

The United States began negotiating the substance of a Consent Decree with the Defendant in Fall 2014, and the District joined in the settlement negotiations in December 2014. (Sims Dec., ¶ 6). The parties, including counsel and technical experts, met at least nine times over a year and a half period in intensive negotiation sessions regarding complex legal and

---

[3] The Complaint alternatively alleges that the restart of the Facility made it a "new" major stationary source, subject to the requirements of PSD and, likewise, a permit incorporating BACT for these pollutants was required prior to the restart. Id. at ¶ 89.

technical issues, and exchanged numerous drafts of the consent decree. *Id.* During negotiations, in May 2015, Defendant voluntary ceased operations at the Facility. (Sims Dec., ¶ 7).

In September 2015, the Tribe requested and was granted a meeting with EPA held in Washington, D.C. on September 22, 2015. (Declaration of Laura Ebbert ("Ebbert Dec."), ¶ 3). Counsel representing the Department of Justice and EPA, Region 9, attended the meeting. *Id.* at ¶ 4. The Tribe presented its concerns regarding particulate matter deposition from the Facility at the meeting. *Id.* at ¶ 5. The Governments received proffered documentation from the Tribe and considered that information several months prior to concluding negotiations on the proposed Consent Decree. (Sims Dec., Exhibit 1, ¶ 8).

**C. The Proposed Consent Decree**

The centerpiece of the proposed Consent Decree is the requirement that Defendant retrofit its boiler with modern-day pollution control equipment for CO and NOx, including Selective Non-Catalytic Reduction or "SNCR" and Over-fire Air or "OFA". (ECF No. 2-1, ¶¶ 15, 17-18). Since the equipment will be a retrofit to an existing boiler, which requires such equipment to be designed and fabricated specifically for the boiler, Defendant will carry out a boiler engineering study, to be approved by EPA and the District, prior to ordering the equipment. *Id.* at ¶ 13. The equipment must be installed and continuously operated within twelve months of EPA's approval of the Boiler Engineering Study Report. *Id.* at ¶ 15.

In order to control particulate emissions from the Facility, the proposed Decree requires Defendant to both improve its use of existing control technology and make certain operational improvements. In order to control $PM_{10}$ emission from the boiler, Defendant must prepare and submit to EPA a plan that recommends optimized operating parameters for the Facility's existing $PM_{10}$ control equipment. *Id.* at ¶ 16. Once approved, Defendant must implement the

recommended parameters. *Id.* at ¶ 35. Additionally, the Decree requires Defendant to submit for approval, and implement, operational plans aimed at reducing fugitive dust from the Facility. (ECF No. 2-1, ¶¶ 25-27, 35). Finally, the proposed Consent Decree would require compliance with emission limits that are lower than those required in Defendant's current permit. (ECF No. 2-1, ¶¶ 18-19). The proposed Consent Decree also obtains a $5000 civil penalty and a $10,000 environmental mitigation project, in the form of a contribution to the District's Wood Stove Replacement Program. (ECF No. 2-1, ¶¶ 8, 41).

**D. Public Comment Period on Proposed Consent Decree**

At the time of lodging, the United States informed the Court that, before seeking entry of the proposed Consent Decree, pursuant to 28 C.F.R. 50.7, the United States would publish notice in the *Federal Register* to allow for public review and comment. (ECF No. 2). Notice of the proposed Consent Decree was duly published on March 4, 2016. 81 Fed. Reg. 11,591 (March 4, 2016). The comment period closed on April 4, 2016. The United States, in consultation with the District, is in the process of carefully considering the complex and detailed public comments received, which requires significant government time and resources. This process involves extensive review of documents, consultation with the District and various technical experts, and potentially discussions with the Defendant.

The United States may withhold its consent to the proposed Consent Decree if the comments disclose facts or considerations that the proposed Consent Decree is improper, inappropriate, inadequate, or not in the public interest. 28 C.F.R. § 50.7. Following consideration of the public comments, the United States will prepare a response to the comments, which the United States will file with the Court along with all written comments received. The District will file a supplemental response as necessary to address District-specific issues. At that time, the

Governments will (1) request this Court to approve and enter the proposed Consent Decree; (2) seek to modify the proposed Consent Decree; or (3) notify the Court of withdrawal of the proposed Consent Decree.

**E. Post-Lodging Meetings with the Tribe and the Tribe's Motion to Intervene**

At the September 22, 2015 meeting with the Tribe, the Department of Justice ("DOJ") informed the Tribe that settlement negotiations were ongoing and agreed to transmit any settlement that was reached to the Tribe on the day any such settlement was lodged with the Court. (Ebbert Dec., ¶ 6). On February 26, 2016, a representative of EPA e-mailed the Tribe a copy of the lodged Consent Decree and offered a meeting with DOJ and EPA. (Ebbert Dec., ¶ 6). On March 23, 2016, representatives of DOJ and EPA met with the Tribe and their counsel at the Rancheria to discuss the proposed Decree and answer any questions. (Sims Dec., ¶ 9).

After the close of the public comment period, on July 15, 2016, the Tribe requested an additional meeting with high-level officials at DOJ and EPA to discuss the proposed Consent Decree. This meeting took place on August 2, 2016 and was attended by a number of high-ranking officials at DOJ and EPA, including two Deputy Assistant Attorneys General for the Environment and Natural Resources Division ("ENRD") of DOJ and a Deputy Section Chief for the Environmental Enforcement Section of ENRD, a Deputy General Counsel for EPA, the Regional Counsel for EPA Region 9, and the Director of the of EPA's Office of Civil Enforcement. At that meeting, the Tribe repeated its concerns with the proposed Consent Decree and the Facility generally and, in particular, its concern that the Facility now has plans to restart.

On August 3, 2016, the Tribe filed its Motion to Intervene in the matter and requested the Court "allow the Tribe to participate fully in this matter as a plaintiff." (ECF No. 17 at 1).[4]

## III. ARGUMENT

The Governments do not contest that the Tribe has the right to intervene in this matter under Federal Rule of Civil Procedure 24(a) and Section 304(b) of the Act, 42 U.S.C. § 7604(b). However, while "the *right* to intervene as it is expressed in the statute is unconditional, it does not follow that the *purposes* motivating that intervention are similarly unconstrained." *United States v. Metro Dist. Comm'n*, 679 F. Supp. 1154, 1158 (D. Mass. 1988), *aff'd* 865 F.2d 2 (1st Cir. 1989) (referring to the citizen suit intervention provision in Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), which is identical to that in the Clean Air Act); *see also Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) (noting that proposed intervenors could "be admitted to participation upon reasonable terms.").

The Court has broad discretion to manage its docket using all available case management tools, including the ability to impose reasonable limits on intervenors. *See Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986); *see also* Fed. R. Civ. P. 24, 1996 advisory committee notes. The Governments believe that the proposed limitations are wholly appropriate where a proposed Consent Decree is filed simultaneously with a Complaint and support the policy favoring settlements negotiated by the government as a means of achieving compliance without significant taxpayer expenditures. Should the Governments decide to withdraw from the

---

[4] The District has also received a notice that within 60 days, the Tribe intends to bring a citizen suit against 24 entities and individuals that it contends are responsible for the Facility's PSD violations and should be defendants in this suit. The Tribe's Notice includes not only the claims asserted in the Governments' Complaint but also claims of emission exceedances and violations of a settlement agreement with the District. (Declaration of Nancy Diamond, ¶ 2, Exhibit A).

Consent Decree, the Governments would not oppose full participation by the Tribe in litigation of the common Clean Air Act claims.

**A. Limits on the Proposed Intervenors' Intervention are Necessary and Appropriate Where a Consent Decree is Lodged with the Court.**

Rather than permitting unrestricted intervention, this Court may impose reasonable conditions on the Tribe's intervention, should it grant the Tribe's request to intervene under Section 304(b)(1)(B) of the Act, 42 U.S.C. § 7604(b)(1)(B), Rule 24(a), and/or Rule 24(b). Fed. R. Civ. P. 24(a) and (b). As emphasized by the Advisory Committee Notes to Rule 24, even "intervention as of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24, 1996 advisory committee notes. "[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352-53 (5th Cir. 1997); *see also San Juan Cnty, Utah v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 288-89 (N.D. Cal. 1976). The notion that a court may impose conditions on an intervenor as of right is "not an innovative suggestion but [is] instead the recognition of a well-established practice." *Shore v. Parklane Hosiery Co., Inc.*, 606 F.2d 354, 356 (2d Cir. 1979) (citations omitted).

In *United States v. South Fla. Water Mgmt Distr.*, 922 F.2d 704, 710 (11th Cir. 1991), although the Eleventh Circuit allowed intervention as of right in a case under the Clean Water Act, it instructed the district court "to condition . . . intervention in this case on such terms as will be consistent with the fair, prompt conduct of this litigation." Indeed, intervention under Rule 24(a) does not afford an unrestricted right to reshape ongoing proceedings; an intervenor must

accept the proceedings as he or she finds them. *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 153 (S.D. Cal. 1954); *see also Vinson*, 321 U.S. at 498 ("[A]n intervenor is admitted to the proceedings as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."). The Governments believe that the pending settlement agreement in this case supports the imposition of certain restrictions to ensure the fair and prompt resolution of this matter and to prevent the alteration of the nature of those proceedings.

**B. The Court Should Require the Tribe to File a Complaint in Intervention Limited to the Common Clean Air Act Claims Before Allowing It to Participate in this Case.**

With its Motion, the Tribe has filed a proposed Complaint in Intervention that includes Clean Air Act claims that parallel those in the Governments' Complaint, as well as additional state law and tribal law claims. (ECF No. 17-1). These additional claims include public and private nuisance, trespass, negligence, equitable indemnification, and violation of a tribal law air quality ordinance. *Id.* Where courts have permitted a party to intervene, they have also restricted the scope of intervention to the claims raised by the original parties when appropriate to "ensure the fair and efficacious resolution" of the action. *Forest Cty. Potawomie Comm'y v. United States*, -- F.R.D. ---, 2016 WL 1465324, *9 (D.D.C., Apr. 14, 2016) (confining intervenors' arguments to the existing claims in this action)*; see also, e.g.*, *United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013) (intervention may be limited to "claims raised by the original parties") (citations omitted); *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1, 11 n.1 (D.D.C. 2009) (granting intervention of right but prohibiting intervenors from raising new claims or collateral issues) (citing *Fund for Animals v. Norton*, 322 F.3d 728, 738 n.11 (D.C. Cir. 2003)); *Cnty. Of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 n. 17

(D.D.C. 2007) (court limited scope of intervention to claims within the scope of the original complaint for "reasons of judicial economy and the purposes . . . [of] intervention."). In fact, this Court declined to permit intervention as a matter of right where a proposed intervenor sought to assert non-Clean Air Act claims, noting that the proposed intervenor cited no authority supporting "a broad right to intervene as a matter of right in a Clean Air Act enforcement case to assert non-Clean Air Act claims." *See United States v. Pacific Gas & Elec.*, 776 F. Supp. 2d 1007, 1017 (N.D. Cal. 2011) (proposed intervenor sought to intervene in a CAA PSD enforcement action to assert claims against EPA under the Endangered Species Act). Although the Endangered Species Act claims in that case were admittedly less related to the subject of litigation than the non-CAA claims the Tribe proposes to add here, the Governments believe the Tribe's additional state and tribal law claims are distinct from the common Clean Air Act claims and adding them will overly complicate this litigation.

Should the Governments withdraw the Consent Decree, the issues to be litigated in the Clean Air Act claims in the Governments' Complaint would involve whether Defendant was required to get a new PSD permit prior to starting construction (or restarting the Facility) in 2008 and the appropriate remedy. In contrast, the Tribe's state and tribal law claims would require litigation of different facts, questions of law, and remedies than those claims alleged in the Governments' Complaint, including at a minimum, alleged property and personal injury damage, the standard of care Defendant is required to meet under common law, causation, and tribal law jurisdiction. These issues and claims are "independent of the issues and claims in this case." *Pacific Gas & Elec.*, 776 F. Supp. 2d at 1024. Allowing the Tribe to add these claims would essentially permit it to "hijack, via intervention – even intervention by right, a government" enforcement action by enlarging the subject of the proceedings. *United States v. Lexington-*

*Fayette Urban Cnty. Gov't*, Case No. 06-386-KSF, 2007 WL 2020246, at *4 (E.D. Ky. July 6, 2007) (declining to order that an intervenor as of right in a Clean Water Act action be included in settlement conferences between existing parties).

Under claim preclusion principles, entry of a Consent Decree in this case could limit the pursuit of the Tribe's overlapping Clean Air Act citizen suit claims, but it should have no effect on the Tribe's separate and distinct non-overlapping state and tribal law claims. Under California law, claim preclusion exists if (1) the claim or issue raised is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is asserted was a party to the prior proceeding. *See Wolin v. City of Los Angeles*, 524 Fed. Appx. 331, 332 (9th Cir. 2013) (applying California law). Unlike in *Wolin*, where the plaintiff's federal statutory and state law claims were based on the same set of facts (or "primary right") – the defendant's refusal to grant the plaintiff a promotion, here, the CAA claims and the Tribe's proposed state and tribal law claims involve different "primary rights." *Id.* at 333. That is, under the CAA claims, the harm alleged is the Facility's non-compliance with the PSD provisions by failure to obtain and comply with a PSD permit, and under the state and tribal claims, the harm alleged is personal injury and property damages caused by emissions of odors, particulate matter, and "brown smoke" from the Facility. (ECF No. 17-1, Exhibit A, ¶¶ 100, 110-114, 119-129, 135-138, 143-150, 154-159, 164-165). If the state court applied Ninth Circuit law on claim preclusion, the result would be the same as claim preclusion only applies if the suits arise from the "same transactional nucleus of fact." *Nat. Res. Def. Council v. Evans*, 279 F. Supp.2d 1129, 1149 (N.D. Cal. 2003). Therefore, there will be no prejudice to the Tribe by limiting its intervention here, because it may still pursue its other

claims in a separate suit. The Governments therefore respectfully request the Court limit the Tribe's intervention to the claims currently at issue in the litigation.

**C. At this Stage of Proceedings, the Court Should Limit the Tribe's Intervention to Participation in Briefs, Hearings, and Appeals Regarding any Motion to Enter the Proposed Consent Decree.**

Should the United States seek entry of the proposed Consent Decree, the only question before the Court will be whether the proposed Consent Decree is fair, reasonable, consistent with the Clean Air Act, and in the public interest. *United States v. Montrose Chem. Corp.*, 50 F.3d 741, 743 (9th Cir. 1995) (citation omitted). In reviewing a consent decree, the court "need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (internal citation omitted). Discovery into the facts underlying the settlement is unnecessary for the Court to apply this standard, which recognizes that a consent decree "is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiations and compromise." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).

If intervention is granted, the Tribe will have an opportunity to respond to any motion for entry filed by the United States by submitting a brief and participating in a hearing should the Court require one. Additionally, should this Court enter the Decree over the Tribe's opposition, they would be permitted to appeal the decision. That is all that is necessary, and all that is required. Other courts have taken similar paths in comparable cases. *See, e.g.*, *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) (finding that the proposed intervenors were able "to protect their interests" and have their objections heard by

participating as *amici*); *United States v. Ketchikan Pulp Co.*, 430 F. Supp. 83, 85 (D. Alaska 1997) ("[O]nce intervenors have been given the opportunity to object to the decree they have had an appropriate day in court and a judgment on consent may be entered.").

To allow further intervention such as engaging in discovery into the facts underlying the settlement is both unnecessary and contrary to the "overriding public interest in settling and quieting litigation." *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977); *see also Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("Settlement agreements conserve judicial time and limit expensive litigation."). That interest is "particularly strong where the decree has been negotiated by the Department of Justice, and on behalf of an agency like EPA which is an expert in its field." *United States v. Chevron U.S.A. Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005). Further litigation would substantially delay implementation of injunctive relief such as the implementation of plans to reduce fugitive dust and $PM_{10}$ emissions, the performance of the boiler engineering study and, ultimately, the installation of new pollution control equipment – thereby erasing the benefits achieved by the parties through their extensive negotiation efforts.

## **CONCLUSION**

For the foregoing reasons, while the Governments agree that the Tribe has a statutory right to intervene, the intervention should be limited to (1) filing a Complaint in Intervention that is limited to the overlapping Clean Air Act claims; and, for now, (2) filing legal briefs in response to a motion to enter the proposed Consent Decree, and (3) filing an appeal should the Consent Decree be entered by the Court over the Tribe's objections. Should the Governments withdraw the proposed Consent Decree, the Governments would not oppose full participation by the Tribe in the litigation of the common Clean Air Act claims.

Respectfully submitted,

UNITED STATES OF AMERICA

/s/ Sheila McAnaney
SHEILA McANANEY (IL Bar No. 6309635)
E-mail: sheila.mcananey@usdoj.gov
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 616-6535
Facsimile: (202) 616-2427

/s/ Michael T. Pyle
MICHAEL T. PYLE
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5087
michael.t.pyle@usdoj.gov

NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT

/s/ Nancy Diamond
NANCY DIAMOND
District Counsel
E-mail: ndiamond@ndiamondlaw.com
822 G Street, Suite 3
Arcata, CA 95521
Telephone: (707) 826-8540

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August 2016, I caused the foregoing PLAINTIFFS' RESPONSE TO BLUE LAKE RANCHERIA'S MOTION TO INTERVENE to be electronically filed with the Clerk of the Court using this Courts' CM/ECF system which will send notice of such filing to counsel of record for all parties.

/s/ Shelia McAnaney
SHEILA McANANEY (IL Bar No. 6309635)
E-mail: sheila.mcananey@usdoj.gov
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section