DAY CARTER & MURPHY LLP

1  DAY CARTER & MURPHY LLP
   JANE E. LUCKHARDT (CA Bar No. 141919)
2  E. RYAN STEPHENSEN (CA Bar No. 246026)
   3620 American River Drive, Suite 205
3  Sacramento, CA  95864
   Telephone:      (916) 246-7316
4  Facsimile:      (916) 570-2525
   Email:          JLuckhardt@daycartermurphy.com
5
   *Attorneys for Defendant Blue Lake Power, LLC*
6

7

8                  UNITED STATES DISTRICT COURT FOR THE
                     NORTHERN DISTRICT OF CALIFORNIA
9                        SAN FRANCISCO DIVISION

10

| | |
|---|---|
| UNITED STATES OF AMERICA and NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT, | Case No.  3:16-cv-00961-JD |
| Plaintiffs, | **DEFENDANT BLUE LAKE POWER LLC'S OPPOSITION TO INTERVENOR BLUE LAKE RANCHERIA TRIBE'S MOTION TO INTERVENE** |
| v. | |
| BLUE LAKE POWER, LLC, | |
| Defendant. | Date:    September 8, 2016<br>Time:    10:00 a.m.<br>Place:   Courtroom 11, 19th Floor<br>         450 Golden Gate Ave.<br>         San Francisco, CA<br>Judge:   Hon. James Donato |

19

20  **I.      Introduction**

21          Defendant Blue Lake Power, LLC ("BLP"), hereby opposes Blue Lake Rancheria's

22  ("Tribe") Motion to Intervene ("Motion").  (ECF No. 17.)  The Motion should be denied because

23  the Tribe's Clean Air Act enforcement claim is barred by the applicable statute of limitations, and

24  because the Tribe's remaining state law and tribal law claims are not properly subject to

25  intervention under the Clean Air Act intervention statutes.  If, however, the Tribe is permitted to

26  intervene, its participation should be restricted to ensure the efficient, prompt adjudication of this

27  Action.

28  / / /

{01023832}                                  1

DAY CARTER & MURPHY LLP

1

## II.     Statement of Issues to Be Decided

2       Whether the Tribe is entitled to intervene in this action, and, if so, what reasonable

3   limitations should be placed on the Tribe's participation in the action to ensure the efficient,

4   prompt adjudication of the litigation.

5

## III.     Factual Background

6       BLP purchased the Blue Lake biomass power plant (the "Facility") on January 17, 2008.

7   (Declaration of Glenn Zane, filed herewith ("Zane Decl."), ¶ 1.)  On December 10, 2008, the

8   North Coast Unified Air Quality Management District (the "District") confirmed that BLP had

9   submitted sufficient information to rebut the presumption of permanent facility shutdown and

10  allowed BLP to restart the Facility under the existing Title V Permit to Operate #NCU 097-12

11  (the "BLP Permit").  (*See* Request for Judicial Notice, filed herewith ("RJN"), Ex. A.)  Prior to

12  starting up the Facility BLP conducted maintenance on the Facility.  On February 11, 2010, BLP

13  fired propane in the boiler at the Facility initiating the start-up of the Facility.  (RJN, Ex. B.)  On

14  June 8, 2010 the District reiterated its finding that the BLP Permit was valid.  *Id.* at Ex. C.  On

15  September 24, 2010 BLP entered into a sale-leaseback agreement for the sale of the Facility.

16  (ECF No. 1 at 5:5-6.)  On March 3, 2014 the United States Environmental Protection Agency

17  ("EPA") issued a Notice of Violation ("NOV) to BLP.  (ECF No. 1 at 4:10-12.)  BLP negotiated a

18  resolution of the issues identified in the NOV with EPA and the District.  (Zane Decl., ¶ 2.)  The

19  resolution of the issues identified in the NOV is memorialized in the proposed Consent Decree

20  filed by EPA in this case on February 16, 2016.  (ECF No. 2.)  EPA published the Consent

21  Decree for comment consistent with 28 C.F.R. § 50.7.  (ECF No. 16 at 2:5-6.)  The Tribe

22  provided comments on the Consent Decree.  (ECF 17, Ex. B.)  As stated in the Joint Case

23  Management Statement, EPA is still considering the comments EPA received on the Consent

24  Decree.  (ECF No. 16.)

25  / / /

26  / / /

27  / / /

28  / / /

{01023832}

2

1

DAY CARTER & MURPHY LLP

**IV.**      **Argument**

2

3

   **A.**      **The Tribe's Motion to Intervene As to Its Clean Air Act Claim Should Be Denied Because the Applicable Statute of Limitations Has Run**

4

   The applicable statute of limitations bars the Tribe's claims for relief under of the Clean

5

Air Act, Prevention of Significant Deterioration ("PSD") program.  *See* 42 U.S.C. § 7470 *et. seq.*

6

As demonstrated below, the five year statute of limitations has run, such that the Tribe's claims

7

regarding violation of the Clean Air Act and this motion for intervention are not timely and

8

should be barred.  *See* 28 U.S.C. § 2462.

9

   The Clean Air Act does not contain a statute of limitations, and thus, the general federal

10

statute of limitations applies.  The following discussion in *New Jersey v. RRI Energy Mid-Atlantic*

11

*Power Holdings, LLC,* 960 F. Supp. 2d 512, 523-524 (2013) clearly describes the appropriate

12

statute of limitations.

13

14

   The Clean Air Act does not specify a limitations period for when an enforcement action must brought. Accordingly, the general federal statute of limitations applies to the Clean Air Act. *United States v. Illinois Power Company*, 245 F.Supp.2d

15

   951, 954 (S.D. Ill. 2003).

16

   Title 28 of the United States Code Section 2462 provides, in pertinent part:

17

18

      Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless

19

      commenced within five years from the date when the claim first accrued....

20

21

   28 U.S.C. § 2462.

22

   By the plain language of § 2462, the statute of limitations begins to run when the claim accrues. As a general matter, a cause of action "accrues" when it has come

23

   into existence as an enforceable claim or right.  *William A. Graham Company v. Haughey*, 646 F.3d 138, 146 (3d Cir. 2011) quoting Black's Law Dictionary (9th

24

   ed. 2009). In other words, a claim accrues when all elements of the cause of action

25

   have objectively come into existence.  *Id.*

26

*New Jersey*, 960 F. Supp. 2d at 523-524.

27

   The Tribe's first claim for relief in its Proposed Complaint in Intervention (the

28

"Complaint", ECF 17-1, Ex. A) alleges that the Facility was required to obtain a preconstruction

{01023832}                                               3

1   permit required by 42 U.S.C. §7475.  *Id.* at 15:27-28; *see also* ECF 17-1, ¶ 2.  The Tribe admits

2   any applicable construction subject to the preconstruction permit requirements of 42 U.S.C. §

3   7475 occurred between September 4, 2008 and April 30, 2010.  *See* ECF 17-1, Ex. A at 13:16-24.

4   The Tribe's alleged claim of construction without a permit therefore arose no later than April 30,

5   2010, more than 5 years ago.  Accordingly, the Complaint's First Claim for Relief relating to the

6   Clean Air Act (*Id.* at 15:26-17:13) is barred by the applicable statute of limitations, such that the

7   Motion should be denied.

8           The failure to obtain a PSD permit prior to construction is not an ongoing requirement and

9   any day of operation without obtaining a PSD permit prior to construction is not an ongoing

10  violation.  *See, e.g., Sierra Club v. Portland General Electric Company*, 663 F. Supp. 2d 983 (D.

11  Or. 2009).  The correct interpretation of the statute of limitations is found in *United States v.*

12  *Campbell Soup Company*, No. CIV-S-95-1854, 1997 U.S. Dist. LEXIS 3211 (E.D. Cal. March

13  11, 1997) and *Sierra Club v. Otter Tail Power Co.,* 615 F.3d 1008 (8th Cir. 2010), which both

14  hold that the statute of limitations begins to run upon commencement of new construction or

15  modification.

16          In *Sierra Club v. Otter Tail Power Co.*, the Sierra Club argued that Section 2462 did not

17  bar their claims because although the construction was completed in 1995, 1998, and 2001,

18  respectively, Section 7475(a) prohibits *operation* of a facility without a proper PSD permit and

19  associated BACT emissions limits.  *Id.* at 1014.  The Eighth Circuit agreed with other courts that

20  concluded that the language of Section 7475(a) "unambiguously indicates that the PSD

21  requirements are conditions of *construction*, not *operation*."  *Id.* at 1014-1015 (emphasis added).

22  In addition to what the Court saw as unambiguous statutory language, the Clean Air Act also

23  provided for enforcement of operational requirements in other provisions.  *Id.* at 1015.  For

24  example, 42 U.S.C. section 7411(e) makes it unlawful to operate a facility in violation of new

25  source performance standards, and 42 U.S.C. section 7661a(a) prohibits operating a facility

26  "except in compliance with a permit."[1]  *Id.*  Because Congress had included enforcement of

27

28  [1] The Eighth Circuit affirmed the District Court's dismissal of the Sierra Club's Title V claims on the grounds that it lacked subject matter jurisdiction because the Sierra Club was required to first

DAY CARTER & MURPHY LLP

{01023832}                                    4

DAY CARTER & MURPHY LLP

1 operating conditions in other statutes, but had not expressly done so in Section 7475, the court

2 concluded that Congress had intentionally omitted operational requirements from the PSD

3 program. *Id.*

4 Similarly, an analysis of the applicable District rule also demonstrates a separation

5 between the permit to construct and the permit to operate.  District Rule 230(a) requires an

6 Authority to Construct for a new or modified stationary source.  A separate rule, District Rule 240

7 requires a Permit to Operate for operation.  Additionally, District Rule 240 does not provide an

8 ongoing obligation because Rule 240 provides that no Permit to Operate may be granted without

9 an Authority to Construct or satisfying the requirements of District Rule 230.  The requirement to

10 obtain an Authority to Construct and comply with the requirements of District Rule 230 is a

11 requirement to issuing a Permit to Operate.  But, the Authority to Construct and the Permit to

12 Operate are still two separate processes and two separate permits.

13 The language contained in the District Rule 230 is very similar to the Sacramento

14 Metropolitan Air Quality Management District ("SMAQMD") Rule 302, applied in *United States*

15 *v. Campbell Soup Company,* where the Eastern District found the authority to construct rule to be

16 separate and distinct from the rule for the permit to operate and thus found, the 5-year statute of

17 limitations for penalty actions applied.[2]  *See Campbell Soup Company,* 1997 U.S.Dist. LEXIS

19 raise the issue in administrative proceedings during the permitting process, and review of such proceedings may only be sought through the Circuit Court.  *See Otter Tail Power Co.,* 615 F.3d at 1013.

[2] The similarities between District Rule 240(c) and SMAQMD Rule 302 are obvious.  District Rule 240(c) reads as follows:

No Permit to Operate shall be granted for any stationary source constructed without authorization as specified in Rule 200(a) [authority to construct or modify] until the information required is presented to the Control Officer, an emission analysis is performed, and the source is altered, if necessary, and made to conform with the standards set forth in Rule 230 [applying PSD increments and best available control technology] and elsewhere in the regulation.

SMAQMD Rule 302 states:

No permit to operate or use shall be granted . . . without authorization as required by Section 301 [requirement to obtain an authority to construct] of this rule, until the information required is presented to the Air Pollution Control Officer and such article, machine, equipment or contrivance, the use of which may cause the issuance of air contaminants or the use of which may eliminate or reduce or control the issuance of air

{01023832}

DEFENDANT BLUE LAKE POWER LLC'S OPPOSITION TO MOTION TO INTERVENE
CASE NO. 3:16-CV-00961-JD

DAY CARTER & MURPHY LLP

1  3211 at *5-*6 & *7-*8.  Therefore, any claims of the Tribe of an ongoing violation should be

2  denied.  Thus, the Tribe's Clean Air Act claims are barred by the 5-year statute of limitations in

3  Section 2462 and the Motion to Intervene should be denied.[3]

4  Finally, any claims by the Tribe that the discovery rule would toll the statute of limitations

5  would be incorrect.  The United States Supreme Court held the discovery rule does not apply to

6  the statute of limitations applicable here, 28 U.S.C. section 2462.  *See Gabelli v. SCE,* 133 S. Ct.

7  1216, 1223-1224 (2013).

8  **B.     The Motion to Intervene Should Be Denied Because the Right to Intervene Under the Clean Air Act Does Not Include the Right to Bring the Tribe's State Law and Tribal Claims**

9

10  The Court should deny the Motion not only because the Tribe's Clean Air Act claim fails

11  on statute of limitations grounds, but also because the Tribe cannot properly bring its remaining

12  State and Tribal Claims into this action via the Clean Air Act intervention statutes.  To allow

13  those additional claims would vastly expand the scope of this Action, and would inevitably delay

14  the efficient adjudication thereof.

15  Citizens and entities such as the Tribe are permitted to intervene in enforcement actions to

16  ensure compliance with the Clean Air Act, not to raise additional claims beyond the Act.  As the

17  Tribe concedes in the Motion (ECF 17 at 6:14-15), Section 304(b)(1)(B) of the Clean Air Act (42

18  U.S.C. § 7604(b)(1)(B)) allows citizens to intervene "***only in order to enforce compliance with***

19  ***the Clean Air Act***."  *United States v. PG&E*, 776 F. Supp. 2d 1007, 1017 (N.D. Cal.

20  2011)(emphasis added).  In *PG&E*, this Court denied intervention by an applicant that sought to

21  intervene under Section 304(b)(1)(B) of the Clean Air Act in order to allege claims under the

22  Endangered Species Act.  *Id*. at 1018.  Moreover, the legislative history behind Section

23  304(b)(1)(B) indicates that intervenors should not be permitted to bring claims unrelated to the

24

25  contaminants, is altered, if necessary, and made to conform to the standards set forth in Section 303 of this rule [standards for granting applications] and elsewhere in these rules and regulations.

26

27  [3] The EPA's claims against BLP are not subject to a statute of limitations defense due to certain tolling agreements between the EPA and BLP dated December 2014, January 2015, March 2015, August 2015 and December 2015.

28

{01023832}                                          6

DAY CARTER & MURPHY LLP

1  Clean Air Act into the case if intervention is permitted:

> There is an extensive legislative history to establish that Congress intended citizen suits to … goad the responsible agencies to more vigorous enforcement *of the anti-pollution standards*….

*Baughman v. Bradford Coal Co.*, 592 F. 2d 215, 218 (3rd Cir. 1979) (citations omitted; emphasis added).

Here, the Tribe's Complaint goes well beyond claims under the Clean Air Act, but also includes California State law claims for: (1) private nuisance; (2) public nuisance; (3) trespass; (4) negligence; and (5) equitable indemnity.  (ECF 71-1, Ex. A at 2:5-7 ("This is a civil action brought by the Tribe under [the Clean Air Act] *and California common law including public nuisance, private nuisance, negligence, and trespass*")(emphasis added); *Id*. at 17:14-23:15. The Complaint also includes a claim that BLP violated a Tribe air quality ordinance ("Tribal Ordinance").  *Id*. at 22:1-23:5.[4]  As none of these State or Tribal claims have anything to do with enforcement of the Clean Air Act, they cannot be included in the current action under the Clean Air Act intervention statutes.  *See PG&E*, 776 F. Supp. 2d at 1017.  In sum, as the Tribe's Clean Air Act claim is barred by the statute of limitations, and the Tribe's remaining State and Tribal claims cannot be properly raised under the Clean Air Act intervention statutes, the Court should deny the Motion in its entirety.  *Id*.

**C.   If the Tribe Is Permitted to Intervene, the Court Should Impose Reasonable Limitations on the Tribe's Participation in the Action**

If the Court determines that the Tribe has the right to intervene, the Court should impose reasonable limitations on the Tribe's participation in the Action to ensure the efficient adjudication thereof.  *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) ("Restrictions on participation may … be placed on an intervenor of right…."); Fed. R. Civ.

_____

[4] This claim is particularly inappropriate as the Tribe concedes that the Tribal Ordinance only applies to "the Rancheria or other territory *over which the Tribe has jurisdiction*" (ECF 17-1, Ex. A at 11:12-13 (emphasis added)), and that the BLP Facility is located outside of Tribal lands and is therefore not subject to the Tribe's jurisdiction. (Motion, ECF 17 at 2:12 (the Facility is located "half a mile from the Tribe's trust lands.").)  The Facility thus is not subject to the Tribal Ordinance, and the Tribe should not be permitted to pursue this claim in this Clean Air Act enforcement action.

{01023832}

7

DAY CARTER & MURPHY LLP

1  P. advisory committee notes to 1966 amendments ("An intervention of right … may be subject to

2  appropriate conditions or restrictions responsive among other things to the requirements of

3  efficient conduct of the proceedings."); *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642

4  F. 3d 728, 741-742 (9th Cir. 2011) (9th Circuit affirmed this Court's reasonable limitations on

5  intervenor's participation and rights in the action).

6        Beyond precluding the Tribe from litigating its State and Tribal claims (as discussed

7  above), the Court should impose restrictions on the Tribe's participation (if intervention is

8  permitted) to ensure the efficient adjudication of the litigation. *See United States v. Duke Energy*

9  *Corp.*, 171 F. Supp. 2d 560, 565-566 (right to intervene did not prevent "the imposition of

10  reasonable limitations on [the applicant-intervenor's] participation to ensure the efficient

11  adjudication of the litigation.").  Given that the EPA and BLP have already agreed to a Proposed

12  Consent Decree, will likely amend the same in response to public comments (including the

13  Tribe's comments), and are working together to ensure compliance with the Clean Air Act and

14  related regulations, the Court should reasonably limit the Tribe's participation so as not to derail

15  the momentum of the action.  Permitting the Tribe unlimited participation in this Action will bog

16  down the process and prevent the prompt conduct of this case. *See United States v. South Florida*

17  *Water Mgmt. Dist.*, 922 F. 2d 704, 710 (11th Cir. 1991) (affirming right of intervention, but

18  remanding to the district court "to condition…intervention in this case on such terms as will be

19  consistent with the fair, prompt conduct of this litigation").  Accordingly, the Court should limit

20  the Tribe's participation in this action to submitting comments on any future Amended Consent

21  Decree that the EPA and BLP may submit to the Court.  This reasonable limitation will permit the

22  Tribe to fulfill its role of encouraging enforcement of the Clean Air Act, while at the same time

23  avoiding the delay that would inevitably result if the Tribe is permitted to intervene without any

24  limitations.

25  / / /

26  / / /

27  / / /

28  / / /

{01023832}

8

**V.      Conclusion**

For the reasons stated above, BLP respectfully requests that the Court deny the Tribe's Motion to Intervene.  In the alternative, if the Tribe is permitted to intervene, BLP requests that the Court impose the reasonable restrictions described herein to ensure the prompt, efficient adjudication of this action.

Respectfully Submitted,

DATED:  August 17, 2016                     DAY CARTER & MURPHY LLP


By:          /s/ Jane E. Luckhardt
                  JANE E. LUCKHARDT
            Attorneys for Defendant Blue Lake Power, LLC

{01023832}                          9

DAY CARTER & MURPHY LLP

1

2

<u>CERTIFICATE OF SERVICE</u>

3       I hereby certify that on this 17th day of August 2016, I caused the foregoing

4   DEFENDANT BLUE LAKE POWER LLC'S OPPOSITION TO INTERVENOR BLUE LAKE

5   RANCHERIA TRIBE'S MOTION TO INTERVENE to be electronically filed with the Clerk of

6   the Court using this Courts' CM/ECF system which will send notice of such filing to counsel of

7   record for all parties.

8

9                                      By:_____/s/ Jane E. Luckhardt_____
                                       JANE E. LUCKHARDT(State Bar No. 141919)
                                       E-MAIL:  jluckhardt@daycartermurphy.com
10                                     Attorney for Blue Lake Power LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{01023832}                          10

DAY CARTER & MURPHY LLP