UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BLUE LAKE POWER, LLC,<br><br>　　　　Defendant. | Case No. 16-cv-00961-JD<br><br>**ORDER RE: MOTION TO INTERVENE**<br>Re: Dkt. No. 17 |

　　　　The Blue Lake Rancheria Tribe ("Tribe") asks to intervene in the pending civil environmental enforcement action brought by the United States and the North Coast Unified Air Quality Management District ("District") against Defendant Blue Lake Power, LLC. Dkt. No. 17. On September 8, 2016, the Court heard argument on the Tribe's motion and now grants it in part.

## BACKGROUND

　　　　This environmental enforcement action concerns a biomass-fired electric generating plant ("Facility") located in Blue Lake, Humboldt County, California. Dkt. No. 1 ¶¶ 1, 22. The Facility was built in 1984 and began commercial operations in 1987. *Id.* ¶ 64. Between 1999 and 2008, the Facility was idle for what appears to be mainly economic reasons. *See id.* ¶¶ 72-74. Defendant Blue Lake Power acquired the Facility in 2008 and undertook substantial physical modifications to restart it. *Id.* ¶ 77. Following the reconstruction, the Facility resumed operations on April 30, 2010 and remained in operation until May 2015. *Id.* ¶ 80; Dkt. No. 17 at 3. The enforcement action is centered on the preconstruction work and subsequent operation. The plaintiff government agencies allege that Blue Lake Power violated the Clean Air Act ("CAA") and accompanying state regulations during those stages. Dkt. No. 1 ¶¶ 1, 64-83.

The regulatory background for this case is complex.  The CAA was enacted to protect and enhance the quality of the nation's air to promote the public health and welfare.  42 U.S.C. § 7401(b)(1).  In 1970, Congress amended the CAA to "guarantee the prompt attainment and maintenance of specified air quality standards." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 469 (2004) (citation omitted).  To accomplish that end, the amendments required that the Environmental Protection Agency ("EPA") establish national ambient air quality standards ("NAAQS") for air pollutants that may cause or contribute to air pollution reasonably anticipated to endanger public health or welfare.  42 U.S.C. §§ 7408(a), 7409(a),(b).

After indications that "[m]erely setting emissions limits" failed to improve air quality in areas that already achieved the minimum standards, Congress again amended the CAA in 1977 to establish the Prevention of Significant Deterioration ("PSD") Program.  *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1011 (8th Cir. 2010); 42 U.S.C. §§ 7470-7492.  Under the PSD program, no "major emitting facility" may be constructed or modified without obtaining a permit setting forth emission limitations and utilizing "best available control technology" ("BACT") for each pollutant subject to regulation.  42 U.S.C. §§ 7475(a)(1),(4).  The PSD program is "primarily implemented by the states through 'state implementation plans' (SIPs)." *Otter Tail*, 615 F.3d at 1011.  Each state is required to adopt and submit to the EPA for approval a SIP that contains a PSD program, and regulations to prevent the significant deterioration of air quality.  42 U.S.C. §§7410, 7471-75; Dkt. No. 1 ¶¶ 31-33.

The EPA approved the District's PSD rules into the California SIP in 1985.  Dkt. No. 1 ¶ 34 (citing 50 Fed. Reg. 30,941 (July 31, 1985) and 50 Fed. Reg. 19,529 (May 9, 1985)).  The applicable PSD regulations governing the Facility are found in these amendments and the federally-approved District PSD Rules, including Rules 130, 200, 220, 230, and 240.  *Id.*; Dkt. No. 21 at 4.

The complaint alleges that Blue Lake Power's failure to obtain a proper preconstruction permit for the work between 2008-2010 and subsequent operation of the Facility violates the PSD requirements of the CAA and the District's regulations, as incorporated into the California SIP.  Dkt. No. 1 ¶¶ 85-92.  These allegations cap a considerable period of regulatory back-and-forth

between the parties. Between April 2010 and May 2011, Blue Lake Power received several Notices of Noncompliance and entered into a settlement agreement with the District for civil penalties on May 20, 2011. Dkt. No. 17 at 3. In 2014, the EPA issued a Finding and Notice of Violation against Blue Lake Power. *Id.* Following this notice, the United States and Blue Lake Power began negotiating a consent decree. Dkt. No. 21 at 5. The District joined negotiations in December 2014. *Id.* In September 2015, the Tribe requested and was granted a meeting with the EPA in Washington, D.C. *Id.* at 6. The Tribe's concerns focused on environmental and health impacts from operation of the Facility. *See* Dkt. No. 17 at 2-5. In February 2016, the United States and the District filed this civil environmental enforcement action. Dkt. No. 1. Along with the filing of the complaint, the government agencies lodged a proposed decree and published the proposal for public comments. Dkt. No. 21 at 7. After participating in the public comments period, the Tribe met again on August 2, 2016 with the DOJ and EPA to discuss the proposed decree, and the health and safety concerns about restarting the Facility. *Id.* at 8. The Tribe moved to intervene on August 3, 2016. Dkt. No. 17. After oral argument on the motion to intervene, the United States filed a motion to enter a revised consent decree on September 22, 2016. Dkt. No. 46.

## DISCUSSION

The Tribe seeks to intervene with a complaint against defendant Blue Lake Power for violations of the CAA, California nuisance, trespass, and negligence laws, Blue Lake Rancheria Air Quality Ordinance, and also seeks equitable indemnification. Dkt. No. 17-1. The Tribe moves for intervention as a right, or in the alternative, by permission. *See* Dkt. No. 17 at 2; Fed. R. Civ. P. 24. The government plaintiffs "do not contest that the Tribe has a right to intervene in this matter under Federal Rule of Civil Procedure 24(a) and Section 304(b) of the Act" to state a CAA claim. Dkt. No. 21 at 9. Blue Lake Power opposes any intervention whatsoever on grounds that the statute of limitations has run for the Tribe's claims related to the preconstruction permit requirement, and the right to intervene under the Clean Air Act does not include the right to bring state and tribal law claims. *See* Dkt. No. 22 at 3, 6. If intervention is allowed, Blue Lake Power joins the agencies in asking that it be limited to the CAA claim. *Id.* at 8.

3

## I. Rule 24 Timeliness

On a timely motion, the Court must permit anyone to intervene who "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). The CAA provides such a right. When a civil enforcement action by the EPA against an alleged CAA violator is already pending in federal court, no citizen suit may be commenced against the violator. 42 U.S.C. § 7604(b)(1)(B). Instead, in any such federal court action, any person may intervene as a matter of right. *Id.*; *see also United States v. Pacific Gas & Elect.*, 776 F. Supp. 2d 1007, 1016-17 (N.D. Cal. 2011).

The timeliness of exercising a procedural right to intervene is evaluated under three factors: (1) the stage of the proceedings, (2) the prejudice to the parties, and (3) the reason for and length of the delay. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). All of these factors are met here. The Tribe sought intervention at the early stage of the proceedings before the complaint had been answered, the proposed consent decree had been entered, or substantive proceedings had occurred. Dkt. No. 17 at 7. No prejudice attaches because the Tribe had participated in the administrative process and voiced concerns about the decree, and in any event the plaintiffs agree that the Tribe has a right under the CAA right to intervene. *Id.* at 8; *see Center for Biological Diversity v. U.S. Fish & Wildlife Service*, No. 15-cv-05754-JST, 2016 WL 1394355, at *2 (N.D. Cal. Apr. 7, 2016). Consequently, the motion to intervene is timely under Rule 24(a).

## II. Statute Of Limitations

The CAA's citizen suit provision allows parties to sue for any repeated or currently ongoing violation of any "an emission standard or limitation under this chapter." 42 U.S.C. § 7604(a)(1). An "emission standard or limitation under this chapter" includes "any ... standard, limitation, or schedule established under any permit issued ... under any applicable State implementation plan approved by the [EPA] Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4). For the citizen suit to be timely, the Tribe "must identify (1) a standard or limitation that [Blue Lake Power] violated or (2) any required permit that it failed to obtain, within five years of bringing this

4

1  suit." *National Parks Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 480 F.3d 410, 418

2  (6th Cir. 2007); 28 U.S.C. § 2462.

3        Blue Lake Power argues that the Tribe's relief under the CAA is time barred because its failure to obtain the preconstruction Authority to Construct ("ATC") permit occurred more than five years ago. Dkt. No. 22 at 3-6. But the causes of action related to the preconstruction permit are only a portion of the Tribe's claims under the CAA and Blue Lake Power has not argued that the "only alleged violation" arises from this event. *See Coalition for Clean Air v. VWR Intern., LLC*, 922 F. Supp. 2d 1089, 1102 (E.D. Cal. 2013). The Tribe's proposed complaint points to several violations of operational activities between 2013 and 2015, well within the five-year statute of limitations. *See* Dkt. No. 17-1 ¶¶ 89-93 (e.g., in 2013, after making changes according to the settlement agreement, "the facility continued to experience permit exceedances," and "[b]etween September 24, 2014 and April 2, 2015, the Facility reported fifteen permit violations.") Like the agencies' complaint, the Tribe's first claim for relief alleges violations related to the operation of the facility without a permit, failure to operate BACT for control of CO, $NO_x$, and $PM_{10}$ emissions, failure to operate in compliance with BACT emissions limitations, and continuing violations of Section 165(a) of the CAA and the District's Rules. *Id.* ¶¶ 100-01. Blue Lake Power has not argued that a citizen suit to enforce these violations would be time barred and they are not.

      With respect to the preconstruction permit, several circuit and district courts have reached different conclusions about whether the failure to obtain the permit under the CAA constitutes a "one-time" or "repeating" violation. *See, e.g., Otter Tail*, 615 F.3d at 1018 (failure to obtain a preconstruction permit is a one-time violation); *National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316, 1322-26 (11th Cir. 2007) (violations of preconstruction requirements occur at the time of construction, not on a continuing basis); *National Parks Conservation Ass'n*, 480 F.3d at 419 (SIP imposed an ongoing requirement to obtain a permit, even after construction was completed); *Sierra Club v. Portland Gen. Elec. Co.*, 663 F. Supp. 2d 983, 992-93 (D. Or. 2009) (the obligation under the PSD program to utilize BACT as an owner or operator is ongoing). In an effort to find a common denominator in these

5

cases, the Eastern District of California concluded that the "[t]he key appears to be that the court must engage in a close examination of the relevant 'permitting' scheme.  Even if the program facially requires only a 'preconstruction' permit, if it also contains ongoing operational requirements that are inseparable from the preconstruction permitting process, then a violation should be considered 'continuing.'"  *See Coalition for Clean Air*, 922 F. Supp. 2d at 1105.  In addition, the Ninth Circuit has held that courts should look at the "plain meaning of the SIPs" to determine if the preconstruction permit regime contains ongoing operational requirements.  *See Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1095 (9th Cir. 2007).

This approach is analytically sensible and Blue Lake Power and the Tribe do not disagree with it.  They differ only on the results of the inquiry.  Dkt. No. 22 at 5-6; Dkt. No. 29 at 4-5. District Rules 240 and 230 contemplate two required permits: the "ATC" permit and the "Permit to Operate".  Blue Lake Power says this distinction shows that the ongoing operational requirements are severed from the initial preconstruction requirement.  *See* Dkt. No. 22 at 5.  But the substantive provisions of the District's ACT regulations are not so neatly separated from the operational requirements.  District Rule 240(b) states that after construction or modification, the "Authority to Construct or modify shall serve as a Temporary Permit for Operation of the equipment until the Permit to Operate is granted or denied."  By the plain language of this regulation, the failure to obtain an ACT continues as a violation until the appropriate Permit to Operate is granted or denied.  *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, No. 1:05-CV-01593 OWW SMS, 2007 WL 2815038, at \*26-27 (E.D. Cal. 2007) (distinguishing a similar permitting scheme from the regulations in *United States v. Campbell Soup Co.*, No. CIV-S-95-1854 DFL, 1997 WL 258894 (E.D. Cal. Mar. 11, 1997)).  Additionally, District Rule 200(a) sets forth the basic requirement that an ATC "shall be obtained from the District prior to starting *construction, modification, operation* or use of any stationary or indirect source which may cause, potentially cause, reduce, control or eliminate the emission of air contaminants." (emphasis added).  Because an ATC may be obtained after construction, but before operation, "the obligation to obtain an appropriate permit is ongoing, and applies even to those sources that did not obtain the appropriate permits before construction."  *See National Parks Conservation Ass'n*, 480 F.3d at

6

419. This reading is also consistent with plaintiffs' allegations about the permitting requirements and violations. Dkt. No. 1 ¶¶ 90-91; Dkt. No. 34 at 4 ("The complaint alleges that each day that the Facility operates without such permits and control technology is a new violation of the CAA.") Blue Lake Power's obligation to obtain an ACT was not a one-time violation and the Tribe is not time barred from bringing that claim.

### III.  Scope of Intervention

Plaintiffs and defendant agree that, if intervention is allowed, it should be limited to the CAA claims. Dkt. No. 21 at 11; Dkt. No. 22 at 8. They also propose that at this stage of the litigation, where a consent decree is lodged with the court, the Tribe should be limited to participating in the Court's review of it and in any subsequent appeals. Dkt. No. 21 at 14; Dkt. No. 22 at 8. Blue Lake Power specifically contends that the Tribe has no right to intervene with a complaint for California state common law and tribal law claims. Dkt. No. 22 at 6-7.

The Tribe's intervention is properly limited to the CAA claims. "The plain language of Section 304 [citizen suit provision] allows a citizen to intervene as of right *only in order to enforce compliance* with the Clean Air Act." *Pacific Gas & Elec.*, 776 F. Supp. 2d at 1017 (emphasis added). While it is clear that the Tribe is intervening for this purpose, it cites no authority for the proposition that there is an unconditional right to bring non-CAA claims as well. Without such a right, the Court must consider how to condition intervention for the "efficient resolution of issues and broadened access to the courts." *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002)).

"[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944). In this tradition, the Advisory Committee Notes to the 1966 amendments to Federal Rule of Civil Procedure 24(a) expressly state that an "intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." The district court is therefore given wide discretion to impose any conditions

consistent with the fair and prompt resolution of the litigation. *See United States v. S. Florida Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991).

The Tribe is seeking to expand this litigation to include state and tribal law claims far beyond the scope of the CAA. These claims would require litigation of entirely different and hitherto untouched facts, questions of law, and remedies, including "alleged property and personal injury damage, the standard of care Defendant is required to meet under common law, causation, and tribal law jurisdiction." Dkt. No. 21 at 12. A motion to enter the consent decree has been filed with the Court and the current parties seek to resolve the litigation without expanding the litigation beyond CAA enforcement. The Tribe is certainly free to pursue the non-CAA claims in California state court or some other forum, but this case is not an efficient or well-considered vehicle for asserting them.

## CONCLUSION

The Court grants the Tribe's motion to intervene under Federal Rule of Civil Procedure 24(a)(1) and 42 U.S.C. § 7604(b)(1)(B), conditioned on the Tribe submitting a modified complaint limited to the CAA claims that parallel the agencies' complaint.

**IT IS SO ORDERED**.

Dated: October 11, 2016

JAMES DONATO
United States District Judge